BLANK ROME LLP
John D. Kimball
Michael B. Schaedle
Gregory F. Vizza (*pro hac vice* admission pending)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Tel: (212) 885-5000
Fax: (212) 885-5001

*Attorneys for the Foreign Representative*
*of Daebo International Shipping Co., Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| **DAEBO INTERNATIONAL SHIPPING CO., LTD.**, | Case No. 15-_____ (__) |
| Debtor in a Foreign Proceeding | |

## *EX PARTE* APPLICATION FOR PROVISIONAL RELIEF PENDING RECOGNITION OF A FOREIGN MAIN PROCEEDING

Chang-Jung Kim, the custodian and foreign representative (the "Petitioner") of Daebo International Shipping Co., Ltd. (the "Company"), in the Company's proceeding under the Korean Rehabilitation and Bankruptcy Act (as amended, the "DBRA") pending before the Seoul Central District Court, (case number 2015 10036 Rehabilitation) (the "Korean Bankruptcy Proceeding"), respectfully makes this Ex Parte *Application* ("Application") *For Provisional Relief Pending Recognition of a Foreign Main Proceeding* pursuant to sections 105(a) and 1519 of title 11 of the United States Code (the "Bankruptcy Code").

1

## PRELIMINARY STATEMENT

The Company is engaged in the business of shipping bulk cargoes, such as iron ore, coal, grains and steel products. The Company currently operates a total of thirteen vessels (owning only one) and regularly trades in U.S. ports.  On February 11, 2015, the Company initiated the Korean Bankruptcy Proceeding.  On February 13, 2015, the Korean Bankruptcy Court entered an *Order* preventing any creditor from taking any enforcement, attachment or other action against the Company's assets ("Comprehensive Stay Order").  During this time, the M/V DAEBO TRADER, a vessel leased by the Company, was docked in the Port of New Orleans, Louisiana. On February 14, 2015, a creditor of the Company initiated a Rule B[1] attachment proceeding in the United States District Court for the Eastern District of Louisiana.[2]  As a result of the Rule B attachment, the M/V DAEBO TRADER was attached and it remains in the Port of New Orleans pending resolution of the proceeding.  Importantly, the Rule B attachment proceeding was initiated **after** the Korean Bankruptcy Court entered the Comprehensive Stay Order.

Based on these facts, Petitioner asks the Court to approve this Application and enter an Order granting provisional relief: (i) prohibiting the commencement or continuation of proceedings against the Company and its property located within the territorial jurisdiction of the United States including, without limitation, owned, operated or chartered (leased) vessels and all property located thereon (including bunkers), as further defined in 11 U.S.C. § 1502(8) (collectively, "Assets"), and (ii) vacating the Rule B attachment against the DAEBO TRADER. Allowing the attachments to stand would permit the Company's creditors to end-run the Korean Bankruptcy Court's explicit prohibition in the Comprehensive Stay Order against enforcing

---

[1] The term "Rule B" in this Application refers to Supplemental Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

[2] Three additional Rule B attachments proceedings concerning the DAEBO TRADER were subsequently initiated against the Company on February 16, 2015, February 18, 2015, and March 10, 2015.

claims against the Company and attaching its property.  The Company must respond to the

merits of the Rule B Actions on March 20, 2015 and, accordingly, respectfully requests a hearing

on this Application on March 19, 2015.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, Bankruptcy Code sections 109 and 1501, and the "Standing Order of Referral of Cases to

Bankruptcy Judges" of the United States District Court for the Southern District of New York

(Ward, Acting C.J.), dated July 10, 1984 and the Amended Standing Order of Reference M-431

dated January 31, 2012 (Preska, Acting CJ.). This is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(P).

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1410.

3.      The statutory predicates for the relief requested herein are Bankruptcy Code

sections 105(a) and 1519(a).

## BACKGROUND

4.      The *Verified Petition Under Chapter 15 for Recognition of a Foreign Main

Proceeding* ("Verified Petition") and the *Declaration of Foreign Representative As Required by

11 U.S.C. § 1515 and in Support of the Ex Parte Application For Provisional Relief Pending

Recognition of a Foreign Main Proceeding* ("Petitioner Declaration"), filed on March 16, 2015,

which outline the relevant facts regarding the Company and the Korean Bankruptcy Proceeding,

are incorporated herein by reference, filed pursuant to Local Rule 9077-1(a) in support of this

Application.

3

**Business of the Company**

5.      The Company was established on or about August 1974 as Daebo Shipping Co.,
Ltd., which was later merged into Daebo International Shipping Co., Ltd. on or about January 5,
2010.  It is organized under the laws of the Republic of Korea, with a registered address at 7th
floor 15 Saemunan-ro 3-gil (Dangju-dong), Jongno-gu, Seoul, Korea.

6.      The Company engages in the marine cargo transport business and also acts as an
international shipping agency providing marine cargo transportation forwarding, ship
management, and combined transport agency and trading to its customers.  The Company
operates bulk carriers as its cores business.

7.      The sales of the Company were about $143 million in 2013 and $140 million in
2014, generated by voyage, charter-out and other revenue.  Voyage revenue accounted for
approximately 85% of the total sales of the Company.  Key customers include KEPCO, Malaysia
Electric Power Company, SeAH Steel Corp. and Hanwha Chemical, for which the Company
transports coal, steel products and salt.

8.      The Company operated a total of nineteen vessels as of the filing of the
Application.  The Company owns one vessel, operates three vessels owned by special purpose
company by way of bareboat charter hire and purchase, and operates at least one vessel under a
certain *Lease Agreement* (the "TRADER Lease") between Daebo as lessee and Shinhan Capital
Co., Ltd. ("Shinhan"), as lessor, dated November 28, 2007.  A true and correct English
translation of the TRADER Lease is attached as **Exhibit "A"** to the *Declaration of Jang Ho Lim
of Bae, Kim & Lee in Support of Verified Petition Under Chapter 15 for Recognition of Foreign
Main Proceeding* ("Korean Counsel Declaration") dated March 12, 2015.  Further, the Company
operates five vessels under long-term charter parties and eight vessels under short term charter

4

parties.  As of March 5, 2015, the Company operates a total of thirteen vessels having re-delivered some of the long-term and short-term chartered vessels.

9.      The Company currently has outstanding 383,824 shares of stock, which are owned by the following entities/individuals in the percentages reflected:

| Name of Entity/Individual | Percentage of Outstanding Stock Owned |
|---|---|
| Chang-Jung Kim | 35.4% |
| Jae Young Noh | 21.8% |
| Daebo International Shipping Co., Ltd. | 20.4% |
| Young Chul Yoon | 9.6% |
| Ji Eun Oh | 7.2% |
| Won Jae Kim | 4.8% |
| Ministry of Strategy and Finance | 0.8% |

10.      The Company regularly trades in various ports in the United States as a core part of its business, including, without limitation, ports in the Gulf Coast and the Eastern seaboard, including New York.  One of its leased vessels, the DAEBO TRADER, is currently located in the Port of New Orleans, Louisiana, where it is subject to Rule B attachment proceedings. Further, Blank Rome LLP holds a certain unused retainer from the Company in New York in connection with legal services performed in respect of the Rule B Actions (defined below) and this chapter 15 proceeding.

**The Korean Bankruptcy Proceeding**

11.      On February 11, 2015, the Company filed an *Application for Commencement of Rehabilitation Proceedings* (the "Foreign Application") under the DRBA.  Thereafter, Korean Bankruptcy Court received the Foreign Application and, on February 13, 2015, entered an *Order*

5

preventing the Company from, *inter alia*, disposing of any assets and repaying any debts ("Preservation Order").  Also on February 13, 2015, the Korean Bankruptcy Court entered the Comprehensive Stay Order.

12.    The Comprehensive Stay Order and Preservation Order were effective pending the Korean Bankruptcy Court's entry of the *Order* commencing the rehabilitation proceeding with respect to the Company ("Commencement Order"), which was issued on March 6, 2015. Also on March 6, 2015, the Korean Bankruptcy Court entered an *Order* concerning the Custodian's authority to act during the Korean Bankruptcy Proceeding ("Custodian Authority Order"), and has specifically authorized the filing of this chapter 15 case.

13.    Upon entry of the Commencement Order, and in accordance with Articles 74(3), 74(4) and 640 of the DRBA, Petitioner, as custodian and as chief executive officer of the Company, has power to conduct all of the Company's business, manage all of its property, and carry out relevant activities overseas for Korean bankruptcy purposes and procedures – all under the conditions prescribed by the relevant foreign legislation, subject to the Korean Bankruptcy Court's supervision.

14.    Accordingly, the Petitioner is authorized to act as "foreign representative" of the Company in this chapter 15 case.  Certified copies of the Comprehensive Stay Order, Preservation Order, Commencement Order, and Custodian Authority Order, in English translation, are attached to the Korean Counsel Declaration as **Exhibit "C"**, **Exhibit "D"**, **Exhibit "E"**, and **Exhibit "F"**.

**Rule B Attachment Proceedings in the Eastern District of Louisiana**

15.    The Company is involved in several lawsuits pending in the United States District Court for the Eastern District of Louisiana:  (i) *Richardson Stevedoring & Logistics Services,*

6

*Inc. v. Daebo International Shipping Co. Ltd. and Shinhan Capital Co. Ltd.*, Case No. 2:15-cv-490; (ii) *SPV 1 LLC v. Daebo International Shipping Co. Ltd. and Shinhan Capital Co. Ltd.*, Case. No. 2:15-cv-494; (iii) *American Marine Services, Inc. v. Daebo International Shipping Co. Ltd. and Shinhan Capital Co. Ltd.*, Case No. 2:15-cv-496; and (iv) *Jaldhi Overseas PTE. Ltd. v. Daebo International Shipping Co. Ltd. et al.* (Case No. 15-cv-00758) (collectively, the "Rule B Actions").  Copies of the respective Rule B complaints are attached hereto as Exhibits A-D.

16.     On February 14, 2015, Richardson Stevedoring & Logistic Services, Inc. ("Richardson") brought maritime attachment proceedings against the Company and Shinhan in order to attach the M/V DAEBO TRADER, alleging claims for stevedoring services provided in Houston, Texas, to other "Daebo vessels" (not the DAEBO TRADER) to a total amount of $1,632,285.25.  In the initial pleadings, Richardson primarily asserted that Shinhan (the reported disponent owner of the DAEBO TRADER) is merely an *alter ego* of the Company.  On February 15, 2015, the Court granted the motion for writ of attachment, and the U.S. Marshal seized the DAEBO TRADER.

17.     Subsequent to the initial filing by Richardson, SPV 1 LLC ("SPV") filed a separate suit seeking payment relating to the use of the M/V KASEY to the amount of $219,240.55.  Similarly, American Marine Services, Inc. ("AMS") filed a separate suit for services to various vessels in the total amount of $312,809.16.  The Court entered an order consolidating all the cases in the Richardson suit.

18.     On February 23, 2015, Dana Shipping and Trading S.A. ("Dana"), the time charterer of the DAEBO TRADER, filed a motion to vacate the attachment asserting arguments on the *alter ego* issue and seeking the vessel's immediate release.  Richardson responded by asserting that the financial arrangement between the Company and Shinhan is essentially a sham

7

such that the Company is the real owner of the DAEBO TRADER as well as the other "Daebo vessels" at issue. Dana's motion to vacate was denied by Order dated March 2, 2015. On March 6, 2015, SPV amended its complaint to assert facts to support an alter ego claim as well as allegations concerning an alleged fraudulent transfer.

19.     Jaldhi Overseas PTE. Ltd. ("Jaldhi") filed its Rule B attachment proceeding (the "Jaldhi Actoin") on March 10, 2015, essentially duplicating the claims raised by Richardson, AMS and SPV asserting a claim for $516,512. It is expected that the Jaldhi Action will be consolidated with the other Rule B Actions before Judge Feldman. Thus, the Rule B Actions remain active and the DAEBO TRADER is restrained from leaving the Port of New Orleans with its cargo.

20.     Each Rule B Action and resulting attachment is in violation of the Comprehensive Stay Order and the Commencement Order. Richardson's *alter ego* allegations are not supportable. Shinhan is not affiliated with the Company. The two entities have different businesses, capital structures and managers. Shinhan Bank lent monies to the Company and Shinhan Capital is a lease-counter party with the Company. Shinhan Capital is record owner of the DAEBO TRADER, which is leased by the Company under the TRADER Lease, which is governed by Korean law. It is irrelevant that Shinhan Capital is not an operator of other vessels, since it is customary in marine finance for the vessel owner/lessor not to be an entity in the business of operating vessels, the way that a bareboat charterer or time charterer typically would be. Shinhan Capital is the registered owner of the vessel, and Shinhan Bank is a lender to the Company. As a lender, Shinhan Bank holds a mortgage on the DAEBO TRADER, which is permitted by Korean law with the consent of the lessor (Shinhan Capital).

8

21.    Since the Company is not the owner of the DAEBO TRADER, the Rule B Actions should be stricken.  But the Company is seeking the vacation of the Rule B Actions through this chapter 15 and this Application because of the exigent need to get the detained cargo of the DAEBO TRADER (soybeans) to its ultimate destination, protecting the Company from additional losses.   Since the Rule B Actions were filed after the Comprehensive Stay Order (staying all unsecured creditor attachment actions against the Company) was entered by the Korean Bankruptcy Court and the Jaldhi Action was filed after the Commencement Order was entered by the Korean Bankruptcy Court, the Rule B Actions are subject to *vacatur* in this chapter 15 as more fully set forth below.

22.    The contests over the Rule B Actions underscore the need to protect the Company's valuable trade in the United States, in the Gulf and on the Eastern seaboard of the United States, by recognizing the Korean Rehabilitation Proceeding and staying creditor action against Company assets in the United States.

## REQUEST FOR RELIEF

23.    Petitioner seeks immediate entry of an order granting *ex parte* provisional relief: (i) staying execution against any Assets of the Company in the United States, prohibiting all persons or entities from commencing or continuing any litigation or any other proceeding, including, without limitation, arbitrations, appeals, mediation or any judicial, quasi judicial, administrative or regulatory action, proceeding or process whatsoever, or taking any other action against or involving Petitioner (with respect to the Company), the Company, or any of the Assets of the Company located in the United States, and (ii) immediately vacating the Rule B attachments against the DAEBO TRADER.

9

24.    Petitioner believes that granting the relief sought herein will best assure an economical, expeditious and equitable administration of the Company's estate and will allow it the necessary "breathing room" to conduct an orderly review of the Company's affairs so that all of its creditors receive equitable treatment in the Korean Bankruptcy Proceeding, rather than exposing the Company to litigation that could lead to piecemeal distribution of its Assets and additional costs and distraction from the administration of the estate.

25.    Petitioner believes that the Company will be immediately and irreparably harmed unless this Court enjoins creditors from seizing the Assets and initiating or continuing any actions against the Company and its Assets.  As detailed in the Rule 1007(a)(4) lists ("Lists") filed in this case, the DAEBO TRADER is subject to the Rule B attachments in the United States and the Company is a defendant in Rule B Actions.  If such relief is not granted, the Korean Bankruptcy Proceeding will be frustrated because certain maritime creditors will gain an advantage over other creditors, Petitioner will be hindered in its effort to manage the Company's financial affairs, and there will be no orderly administration of the assets of, and claims against, the Company.

## ARGUMENT

### A.  Petitioner Seeks Provisional Relief Urgently Needed to Protect the Assets of the Company and the Interests of Creditors

26.    Upon the Court's recognition of a foreign main proceeding, Bankruptcy Code section 1520(a)(1) states that the automatic stay provisions of Bankruptcy Code section 362 apply to protect the Company from commencement or continuation of any claims and any act to take possession of the Company's property. 11 U.S.C. § 1520(a)(1).; see also United States v. J.A. Jones Constr. Grp., LLC, 333 B.R. 637, 638 (E.D.N.Y. 2005) ("Once a foreign bankruptcy

10

proceeding is recognized, a wide range of relief . . . immediately becomes available, including the automatic stay provision of section 362 . . . .").

27.    Pending the Court's determination on recognition of the Korean Bankruptcy Proceeding as a foreign main proceeding, however, Petitioner requests immediate provisional relief:  (i) enjoining the commencement or continuation of any and all known or unknown litigation against the Company and its Assets including the Rule B Actions, and (ii) vacating the Rule B attachment against the M/V DAEBO TRADER. See 11 U.S.C. § 1519. This provisional relief is needed to maintain the *status quo*, avoid incurring substantial cost defending litigation (including the Rule B Actions), and to fairly treat the Company's creditors as a collective whole by allowing the DAEBO TRADER to continue to operate, while requiring the attaching creditors' participation in the Korean Bankruptcy Proceeding along with all of the Company's other creditors.  In support of this Application, Petitioner submits a *Declaration of Foreign Representative as Required by 11 U.S.C. § 1515 and in Support of the* Ex Parte *Application for Provisional Relief Pending Recognition of a Foreign Main Proceeding* ("Foreign Representative Declaration").

**B. The Relief Requested Is Authorized Under the Bankruptcy Code and the Law of this District**

28.    Bankruptcy Code section 1519(a) authorizes the Court to grant "relief of a provisional nature" from the time a chapter 15 petition is filed until "the court rules on the [chapter 15] petition," where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors." 11 U.S.C. § 1519(a). Section 1519(a) specifically allows the Court to enter relief of the kind requested in this Application. Id.; see also 11 U.S.C. § 1521(a)(3), (4)

11

and (7) (setting forth additional forms of relief allowed in a provisional order as incorporated by reference in 11 U.S.C. § 1519(a)(3)).[3]

29.    Specifically, Bankruptcy Code section 1519(a)(1) authorizes a bankruptcy court to "stay[] execution against the debtor's assets."   Petitioner requests relief under section 1519(a)(1) to stay the Rule B Actions and any other litigation that is or could be commenced against the Assets.

30.    Bankruptcy Code section 1519(a)(2) allows a bankruptcy court to authorize a "foreign representative or another person authorized by the court" to "protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy."  Here, Petitioner requests relief under Bankruptcy Code section 1519(a)(2) vacating the Rule B attachments to allow potentially perishable cargo (soybeans) on the DAEBO TRADER to be delivered, and to entrust the Petitioner, as CEO of the Company and its foreign representative, with the continued direction of the business of the Company during the Korean Bankruptcy Proceeding, including the use of the DAEBO TRADER, without interference by U.S. creditors.

31.    Under Bankruptcy Code section 1519(a)(3), a bankruptcy court is authorized to grant additional provisional relief as referenced in, *inter alia*, § 1521(a)(7), which includes relief available to a trustee under Bankruptcy Code section 542.  Accordingly, Petitioner requests relief

---

[3] The relief requested in this Application has been granted in many shipping chapter 15 cases in the Southern District of New York. See e.g, In re Daehan Shipbuilding Co., Ltd., Case No. 14-12391 (SHL) (Bankr. S.D.N.Y. 2014), Dkt. No. 8 (enjoining creditors from commencing or continuing any litigation or any other action against petitioner, the debtor or its assets); In re STX Pan Ocean Co., Ltd., Case No. 13-12046 (SCC) (Bankr. S.D.N.Y. 2013), Dkt. Nos. 30 and 45 (enjoining creditors from commencing or continuing any litigation and vacating Rule B attachments); In re Daewoo Logistics Corp., Case No. 09-15558 (BRL) (Bankr. S.D.N.Y. 2009); In re Korea Line Corp., Case No. 11-10789 (REG) (Bankr. S.D.N.Y. 2011); In re Samsun Logix Corp., Case No. 09-11109 (SMB) (Bankr. S.D.N.Y. 2009); In re Armada (Singapore) PTE. LTD., Case No. 09-10105 (JMP) (Bankr S.D.N.Y. 2009); In re Britannia Bulk Plc, Case No. 0814543 (REG) (Bankr. S.D.N.Y. 2008).

under Bankruptcy Code section 542 for turnover of property of the estate, *i.e.*, the DAEBO

TRADER and its cargo.

32.     Bankruptcy Code section 105(a) also allows the Court to "issue any order…

necessary or appropriate to carry out the provisions of [title 11]." 11 U.S.C. § 105(a). Relief

under Bankruptcy Code section 105(a) includes a bankruptcy court's authority to issue

injunctions to prevent irreparable harm and retain the status quo.  See, e.g., In re Britestarr

Homes, Inc., 368 B.R. 106, 108 (Bankr. D. Conn. 2007).  As such, the relief sought by the

Petitioner is within the broad power of this Court as clearly contemplated in Bankruptcy Code

sections 1519, 1521 and 105.

33.     Bankruptcy Code section 1519(e) provides that "[t]he standards, procedures, and

limitations applicable to an injunction shall apply to [a request for provisional] relief under this

section." 11 U.S.C. § 1519(e).  Courts in this District have read Bankruptcy Code section

1519(e) broadly to simply require a weighing of the equities in determining whether recognition

will occur and, if so, granting provisional relief that would be accorded a debtor upon

recognition.  This process can be accomplished in one hearing to consider evidence on whether a

chapter 15 debtor is likely to obtain recognition, rather than a series of hearings (TRO,

injunction, recognition) during which the identical evidence is presented.  This "one-step"

process was utilized by Judge Glenn in In re Daehan Shipbuilding Co., Ltd., Case No. 14-12391,

where he ordered provisional relief in the form of a stay at the initial hearing on provisional

relief on three days' notice to parties in interest.  See Case No. 14-12391, Dkt. Nos. 3 and 8

(Application for Ex Parte Relief filed on August 18, 2014 with Order granting requested relief

entered on August 21, 2014 after hearing); see also In re Pro-Fit Holdings, Ltd. 391 B.R. 850,

860-65 (Bankr. C.D. Cal. 2008) (applying § 362 provisionally, pending recognition, and noting

13

that because § 362 relief (and not *in personam* injunctive relief) was being sought, no adversary proceeding was required and the rules applicable to the issuance of an injunction were inapplicable).[4]

34.    Without a provisional stay of all proceedings against Company and its Assets (including the Rule B Actions), the purpose of the Korean Bankruptcy Proceeding will be frustrated by allowing certain creditors to be preferred and interfering with the Assets.   The Company will suffer significant harm by the continuation of the Rule B Actions and, upon information, certain other creditors of the Company are considering initiating Rule B attachments of other Company vessels in the United States.   The Rule B Actions and any additional attachments will further restrict the Company's control over its Assets, thereby hindering progress in the Korean Bankruptcy Proceeding.

35.    Significantly, chapter 15 has been invoked in a number of international shipping bankruptcy cases to obtain *vacatur* of Rule B attachments.   For example, In re Atlas Shipping A/S, 404 B.R. 726 (Bankr. S.D.N.Y. 2009), involved Rule B attachments of Atlas Bulk's EFTs (electronic fund transfers) in this district, both before and after it filed its bankruptcy proceeding in Denmark.

36.    Atlas Bulk subsequently filed a chapter 15 petition in this Court and sought *vacatur* of all the Rule B attachments and repatriation of the attached EFTs in a recognized foreign main proceeding.   Judge Glenn vacated the Rule B attachments because comity required the release of the debtor's property subject to a pre-attachment Danish insolvency proceeding,

---

[4] If the Court is uncomfortable with the one-step approach, Petitioner and the Company can satisfy the Second Circuit's standards for a permanent injunction, which require essentially the same showing contained below, including whether (i) Petitioner will be successful on the merits of their attempt to obtain recognition of this proceeding as a foreign main proceeding, (ii) there is no available remedy at law, and (iii) the balance of equities favors granting such relief.   See Patsy's Italian Rest., Inc. v. Banas, 658 F.3d 254, 272 (2d Cir. 2011).

134879.06502/12488196v.6

*i.e.*, Danish insolvency law required that any Atlas Bulk's property could not be attached while the Danish insolvency proceeding was pending.  Id. at 733-36.

37.     In CSL Australia Pty. Ltd. v. Britannia Bulkers PLC et al, No. 08-cv-8290, 2009 U.S. Dist. LEXIS 81173 (S.D.N.Y. Sept. 8, 2009), the District Court considered Britannia A/S's request to vacate a Rule B attachment and turnover the attached funds to the trustee in its Danish bankruptcy proceeding.  The creditor responded by asserting its right to confirm as a judgment a Singapore arbitration award it had obtained on the merits of the dispute, which formed the basis of the original attachment.

38.     The Court determined that *vacatur* was appropriate:

> The Court finds that *vacatur* of the amended order of attachment is supported by principles of comity.  The Court has reviewed the unrebutted evidence Britannia A/S has proffered on Danish bankruptcy law.  Nothing in the record indicates that deference to the Danish Court would violate or infringe the laws or public policy of the United States, or that the Danish proceedings are procedurally unfair.
>
> *      *      *
>
> In this vein, "[p]ermitting the Rule B attachment to stand would run afoul of principles of international comity," Transfield ER Cape Ltd. v. STX Pan Ocean Co., No. 09 Civ. 1250, 2009 U.S. Dist. LEXIS 21185, at *13 (S.D.N.Y. Mar. 17, 2009) (Koetl, J.), by enabling CSL to make an end-run around the Danish Court's explicit proscription against disposition of a debtor's property outside of the bankruptcy proceeding, and the unconditional dissolution under the Danish Bankruptcy Code of all attachments made prior to the bankruptcy.

Id. at *12-15.

39.     Both decisions are directly relevant to the facts of this chapter 15 proceeding given the attempt by the plaintiffs in the Rule B Actions to "end run" the Korean Bankruptcy Proceeding.  Three of the Rule B Actions were filed after the Korean Bankruptcy Court entered

15

the Comprehensive Stay Order preventing attachment of the Company's property and the Jaldhi

Action was filed <u>after</u> entry of the Commencement Order.  Thus, if the DAEBO TRADER were

to pull into a Korean port the Comprehensive Stay Order and, subsequently, the Commencement

Order would prevent a creditor from taking any action to enforce a claim under Korean law

against the vessel.  Comity with the Korean Bankruptcy Proceeding commands the same result

for the Company's vessels doing business in U.S. ports.

40.     Upon recognition, the automatic stay will apply under Bankruptcy Code section

1520(a)(1) and the Orders entered by the Korean Bankruptcy Court (including the

Comprehensive Stay Order and Commencement Order) will be given comity in the U.S., thereby

authorizing *vacatur* of the Rule B attachments.  Thus, the provisional relief requested would be

provided to the Company by operation of law upon recognition.  The Company's right to

provisional relief in the form of a stay and *vacatur* of the Rule B attachments, however, is

predicated on the Court's determination that the Company is likely to obtain recognition as a

foreign main proceeding.

41.     The provisional relief requested in this Application is authorized by Bankruptcy

Code section 1519.  In support of their request for a provisional stay and *vacatur* of the Rule B

attachments, Petitioner and the Company assert that this chapter 15 proceeding will be

recognized as a foreign main proceeding for the following reasons.

### i. The Chapter 15 Proceeding is Likely to be Recognized as a Foreign Main Proceeding

42.     Petitioner and the Company are entitled to relief identical to the provisional relief

requested herein upon recognition of the Korean Bankruptcy Proceeding as a foreign main

proceeding. <u>See</u> 11 U.S.C. §§ 1520 and 1521.  Based on the facts of this case, the Court will

likely conclude that (i) the Korean Bankruptcy Proceeding is a "foreign proceeding", (ii)

16

Petitioner is a "foreign representative", and (iii) the Korean Bankruptcy Proceeding is a "foreign main proceeding."  Significantly, Daehan, STX, Samsun, Daewoo and Korea Line, all of which are Korean companies, obtained recognition orders in their chapter 15 cases (referenced above at footnote 3), granting recognition of their DRBA proceedings as foreign main proceedings.

### a. The Korean Bankruptcy Proceeding is a Foreign Proceeding

43.     Bankruptcy Code section 101(23) defines a foreign proceeding as:

> A collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

44.     As more fully described in the supporting documents to the Verified Petition, the Korean Bankruptcy Proceeding was commenced pursuant to the DRBA, which governs the Company's rehabilitation and provides for a centralized procedure by which the Company's creditors have the opportunity to file their claims and have them adjusted in the Korean Bankruptcy Proceeding.   The Korean Bankruptcy Proceeding is:   (i) a collective judicial proceeding in a foreign country under the DRBA, (ii) in which the assets and affairs of the debtor are subject to supervision by a foreign court, (iii) for the purpose of reorganization or liquidation. Moreover, the DRBA is a law relating to insolvency or adjustment of debt. Thus, under the plain meaning of Bankruptcy Code section 101(23), the Korean Bankruptcy Proceeding is a "foreign proceeding."

### b. Petitioner is a Foreign Representative

45.     This chapter 15 case was commenced by authorized "foreign representatives" within the meaning of Bankruptcy Code section 101(24), which states:

17

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's asserts or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

46.     As an individual, Petitioner is a "person" within the meaning of Bankruptcy Code section 101(41).     Further, Petitioner is the Chief Executive Officer and custodian of the Company and, therefore, is authorized to act as its representative with respect to the Korean Bankruptcy Proceeding.     Accordingly, Petitioner is a "foreign representative" within the meaning of Bankruptcy Code section 101(24) and is entitled to commence this chapter 15 case.

### c.   The Korean Bankruptcy Proceeding is a Foreign Main Proceeding

47.     The Bankruptcy Code provides that a foreign proceeding for which chapter 15 recognition is sought must be recognized as a "foreign main proceeding" if it is pending in the country where the debtor has the center of its main interests. See 11 U.S.C. § 1517(b)(1). While the Bankruptcy Code does not define "center of main interests," it does provide that, absent "evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 130 (Bankr. S.D.N.Y. 2007), aff'd 389 B.R. 325 (S.D.N.Y. 2008) (noting that presumption that debtor's center of main interests is the place of its registered office may be "rebutted by evidence to the contrary"); Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.), 714 F.3d 127, 130 (2d Cir. 2013) (explaining that courts look to factors such as the location of the debtor's headquarters, the location of those who actually manage the debtor, and the location of the debtor's primary assets, among other things, to determine the foreign debtor's COMI).

48.    The Company's registered office is located in Seoul, Korea and, in accordance

with Bankruptcy Code section 1517(b), and in the absence of evidence to the contrary, Korea

should be found to be the center of the Company's main interests. In re Sphinx, Ltd., 351 B.R.

103, 117 (Bankr. S.D.N.Y. 2006) (noting that the debtors' center of main interests are presumed

to be the Cayman Islands, where the debtors are registered). The assertion that Korea is the

center of the Company's main interests is further supported by the fact that the Company is

incorporated under Korean Law and its head office is located at 7th floor 15 Saemunan-ro 3-gil

(Dangju-dong), Jongno-gu, Seoul, Korea, where it undertakes its daily business activities. Korea

is "ascertainable by third parties" as the Company's center of main interests. See In re Bear

Sterns, 374 B.R. at 130 (noting that debtor's center of main interests is the United States where

the debtors "conduct the administration of their interests on a regular basis is therefore

ascertainable by third parties"). Accordingly, the Korean Bankruptcy Proceeding should be

recognized as a foreign main proceeding as defined in Bankruptcy Code section 1502(4) because

it is pending in Korea, which is the center of the Company's main interests.

**ii.    Inadequacy of Legal Remedy**

49.    Irreparable harm is one basis for establishing the inadequacy of any legal remedy.

Travellers Int'l AG v. Trans World Airlines, Inc., 722 F. Supp. 1087, 1096 (S.D.N.Y. 1989).    It

has been consistently held that "the premature piecing out of property involved in a foreign

liquidation proceeding constitutes irreparable injury." In re Lines, 81 B.R. 267, 270 (Bankr.

S.D.N.Y. 1988); see also In re MMG LLC, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000)

("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their

claims or obtain preferred positions to the detriment of other creditors."). As described herein

and in the Foreign Representative Declaration, the risk of such irreparable harm to the Company

is clearly present and was recognized by this Court in similar circumstances in Daehan, STX, Samsun, Daewoo and Korea Lines. A successful administration of the Company requires that the resolution of all claims be centralized in the Korean Bankruptcy Proceeding without creditors obtaining preferences and interfering with the Assets. Further, vacating the Rule B attachments will allow the potentially perishable cargo on the DAEBO TRADER to be delivered. Should the DAEBO TRADER be further detained and unable to deliver its cargo, the Company may suffer irreparable, permanent loss in respect of the spoiled cargo.

### iii.   The Balance of the Hardship Tips Decidedly in Favor of Petitioner

50.    A provisional stay of all litigation against the Company and the attachment, seizure, transfer and lien and/or judgment enforcement of any parties as against the Company and its Assets will prevent their permanent loss to the estate and will cause minimal hardship to any persons subject to the stay. Indeed, all of the Company's creditors will benefit from Petitioner's efforts to preserve and maximize the value of the Company's estate and a stay will prevent the Assets from being permanently lost. All creditors will be able to participate in the Korean Bankruptcy Proceeding on an equitable basis with all other similarly situated creditors.

51.    Similarly, the plaintiffs in the Rule B Actions (perhaps unknowingly) have violated the Comprehensive Stay Order and/or the Commencement Order and should not be rewarded for doing so. They too should be required to participate in the Korean Bankruptcy Proceeding in respect of their claims against the Company and should not receive a preference based on their ignorance of the Korean Bankruptcy Court's orders.

52.    Based on the foregoing, given the likelihood of recognition, the Court should grant a provisional stay of all proceedings against the Company and vacate the pending Rule B attachments against the DAEBO TRADER under Bankruptcy Code section 1519.

20

## REQUEST FOR WAIVER OF LOCAL BANKRUPTCY RULE 9013-1(b)

53.    Petitioner respectfully requests that this Court waive the requirement set forth in Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that any motion filed shall be accompanied by a memorandum of law on the grounds that the relevant authorities and legal authorities in support of this Application are contained herein.

## REQUEST FOR WAIVER OF FEDERAL RULE OF CIVIL PROCEDURE 65(c)

54.    Bankruptcy Rule 7065 expressly provides that "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)."  To the extent Rule 65 of the Federal Rules of Civil Procedure applies, Petitioner believes that the security requirements imposed by Rule 65(c) are unwarranted under the circumstances and, accordingly, requests a waiver of such requirements pursuant to Bankruptcy Rule 7065.

*[Remainder of Page Intentionally Left Blank]*

21

## <u>CONCLUSION</u>

**WHEREFORE**, Petitioner respectfully requests that this Court (i) enter, substantially in the form annexed hereto as **Exhibit "E"**, the proposed order granting *ex parte* relief pending recognition of a foreign main proceeding, (ii) schedule a hearing to consider Petitioner's request for provisional relief, and (iii) grant any such other relief as this Court determines is just and equitable.

Dated: New York, New York
      March 16, 2015

                              Respectfully submitted by

                              BLANK ROME LLP

By: */s/ Michael B. Schaedle*
          John D. Kimball
          Michael B. Schaedle
          Gregory F. Vizza (*pro hac vice* admission pending)
          405 Lexington Avenue
          New York, New York 10174-0208
          Telephone (212) 885-5149
          Facsimile (212) 885-5001

          *Attorneys for the Foreign Representative of Daebo*
          *International Shipping Co., Ltd.*

134879.06502/12488196v.6