UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**DAEBO INTERNATIONAL SHIPPING CO., LTD.,**<br><br>Debtor in a Foreign Proceeding | CHAPTER 15<br><br>Case No. 15-10616 (MEW) |

---

## LIMITED OBJECTION TO REQUEST FOR PROVISIONAL RELIEF

---

**HOLLAND & KNIGHT LLP**

Warren E. Gluck
Barbra R. Parlin
Duvol M. Thompson

31 West 52nd Street
New York, NY 10019
Tel:    (212) 513-3200
Fax:    (212) 385-9010

*Attorneys for SPV 1, LLC, Jaldhi Overseas PTE. Ltd., & Richardson Stevedoring & Logistics Services, Inc.*

## Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .....................................................................................4

   A.    THE PARTIES............................................................................................4

   B.    THE VESSEL IS NOT PROPERTY OF THE FOREIGN DEBTOR'S ESTATE ................6

ARGUMENT .......................................................................................................7

APPLICABLE LEGAL STANDARD ........................................................................7

MARITIME ATTACHMENTS AND THE RULE B CLAIMANTS' SECURED STATUS.........9

   POINT I. 11 U.S.C. § 1519 DOES NOT AUTHORIZE VACATUR OF AN
       ATTACHMENT ................................................................................11

   POINT II. PETITIONER HAS FAILED TO DEMONSTRATE IRREPARABLE
       HARM IF THE PROVISIONAL RELIEF IS NOT GRANTED ............................13

   POINT III. PETITIONER HAS FAILED TO DEMONSTRATE A PROBABILITY OF
       SUCCESS ON THE MERITS THAT THE ATTACHMENT WOULD BE
       VACATED AFTER RECOGNITION ........................................................14

   POINT IV. THE BALANCE OF EQUITIES WEIGHS DECIDEDLY IN THE RULE
       B CLAIMANTS FAVOR ....................................................................18

CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

CASES

*Atkins v. The Disintegrating Co.*,
    85 U.S. 272 (1874)............................................................................................9

*Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*,
    85 F.3d 44 (2d Cir. 1996)................................................................................9

*Brenntag Intern. Chemicals, Inc. v. Bank of India*,
    175 F.3d 245 (2d Cir. 1999).........................................................................13

*Chan v. Society Expeditions*,
    123 F.3d 1297 (9th Cir. 1997) .....................................................................10

*Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB*,
    773 F.2d (2d Cir. 1985)................................................................................14

*Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*,
    782 F.2d 329 (2d Cir. 1986).........................................................................10

*Ebin v. Kangadis Family Mgmt*,
    No. 14-cv-1324, 2014 WL 4638700 (S.D.N.Y. Sept. 28, 2014) ..................16

*Flame S.A. v. Freight Bulk Pte Ltd.*,
    39 F. Supp. 3d 769 (E.D.Va. 2014) ............................................................11

*In re Atlas Shipping A/S*,
    404 B.R. 726 (Bankr. S.D.N.Y. 2009).................................................12, 14

*In re Britannia Bulk PLC*,
    08-14543 (Bankr. S.D.N.Y. 2008)...............................................................12

*In re Britannia Bulkers A/S*,
    08-15187 (Bankr. S.D.N.Y.) 2009 WL 2876250 (S.D.N.Y. Sept. 8, 2009) ...........12

*In re Chugach Forest Prod. Inc.*,
    23 F.3d 241 (9th Cir. 1994) .........................................................................17

*In re Culmer*,
    25 B.R. 621 (Bankr. S.D.N.Y. 1982)..........................................................14

*In Re The International Banking Corporation*,
    439 B.R. 614 (Bankr. S.D.N.Y. 2010).................................................11, 12

*In re Korea Line Corp.*,
    11-10789 (Bankr. S.D.N.Y.) ..............................................................................12, 14

*In re Koreag*,
    961 F.2d 341 (2d Cir. 1992)................................................................................15

*In re Lines*,
    81 B.R. 267 (Bankr. S.D.N.Y. 1988) ...................................................................8

*In re M/V RICKMERS GENOA Litigation*,
    643 F. Supp. 2d 553 (S.D.N.Y. 2009)...............................................................10

*In re Millard*,
    501 B.R. 644 (Bankr. S.D.N.Y. 2014)...............................................................12

*In re Millenium Seacarriers*,
    419 F.3d 83 (2d Cir. 2005)................................................................................17

*In re Milovanovic*,
    357 B.R. 250 (Bankr. S.D.N.Y. 2006)...............................................................14

*In re Riffe Petroleum Co.*
    601 F.2d 1385 (10th Cir. 1979) ........................................................................17

*In re Transfield ER Cape*,
    10-16270 (Bankr. S.D.N.Y.) .............................................................................12

*In re Transfield ER Cape Ltd.*,
    10-16270 (Bankr. S.D.N.Y.) .............................................................................14

*In re Treco*,
    240 F.3d 148 (2d Cir. 2001)...........................................................................3, 11

*In re Worldwide Education Serv. Inc.*,
    494 B.R. 494 (C.D.Cal. 2013) .......................................................................7, 14

*Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*
    412 F.3d 418 (2d Cir. 2005)..............................................................................15

*Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren Ltd.*,
    485 F. Supp. 2d 399 (S.D.N.Y. 2007)...............................................................10

*Polar Shipping Ltd. v. Oriental Shipping Corp.*,
    680 F.2d 627 (9th Cir. 1982) ............................................................................10

*Reuters Ltd. v. United Press Int'l*,
    903 F.2d 904 (2d Cir. 1990)..............................................................................13

*Schenck v. Pro-Choice Network Of Western New York*,
   519 U.S. 357 (1997)..................................................................................13

*Steverdoring & Logistics Services, Inc. v. Daebo International Shipping Co. Ltd.
et al.*,
   No. 2:15-cv-490 (E.D.La. March 2, 2015) ..........................................................2

*Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*,
   339 U.S. 684 (1950)..................................................................................10

*Teachers Ins. & Annuity Ass'n v. Butler*,
   803 F.2d 61, 65 (2d Cir. 1986)....................................................................16

*Tinnerello & Sons, Inc. v. Town of Stonington*,
   141 F.3d 46 (2d Cir. 1998)...........................................................................8

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
   825 F.2d 709 (2d Cir. 1987).......................................................................14

*Williamson v. Recovery Ltd. P'ship*,
   542 F.3d 43 (2d Cir. 2008).........................................................................10

STATUTES

11 U.S.C. § 1501 *et seq.*..................................................................................1

11 U.S.C. § 1519.................................................................................... passim

11 U.S.C. § 1520.........................................................................................8

11 U.S.C. § 1521................................................................................11, 12, 15

28 U.S.C. § 1410.......................................................................................11

OTHER AUTHORITIES

U.S. Const. Article III § 2 .............................................................................9

1.      Claimants SPV 1 LLC ("**SPV**"), Richardson Stevedoring & Logistics Services, Inc. ("**Richardson**") and Jaldhi Overseas Pte. Ltd. ("**Jaldhi**"), (collectively, the "**Rule B**[1] **Claimants**")  submit this limited objection to the ex parte provisional relief application filed by petitioner Chang-Jung Kim ("**Petitioner**") in conjunction with Petitioner's application for recognition of the Daebo International Shipping Co., Ltd.'s ("**Daebo**" or the "**Foreign Debtor**") Korean Bankruptcy proceeding ("**Korean Proceeding**") pursuant to 11 U.S.C. 1501 *et seq.* ("**Chapter 15**").

### PRELIMINARY STATEMENT

2.      For the purposes of this limited objection, Rule B Claimants do not challenge the provisions of the proposed provisional relief order which seeks a stay of attachments or execution against property of the debtor, and even property, such as vessels, in which the debtor has a lease or charter interest.[2]

3.      Rule B Claimants, however, vigorously object to the unprecedented and unsupportable "vacatur" relief Petitioners seek with respect to the vessel M/V Daebo Trader ("**Vessel**") pursuant to 11 U.S.C. § 1519 (the requested vacatur of the Rule B Claimants Rule B attachment of the vessel shall be referred to herein as "**Vacatur Relief**").

4.      To be clear, the Vessel is not owned by Daebo.  Rather, the Vessel is owned by a third party bank, Shinhan Capital Co. Ltd. ("**Shinhan**").   Shinhan is not a debtor in any bankruptcy or restructuring proceeding.

---

[1] The term "Rule B" in this Application refers to Supplemental Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

[2] The Rule B claimants reserve their rights to and shall object to the issuance of a final recognition order wherein protections of the automatic stay are extended to non-debtor assets, including chartered and leased vessels.  Because the issue is not exigent, it is not addressed herein.

5.      Each of the claimants is a secured creditor in respect of their admiralty claims against Shinhan for fraudulent transfer and piercing of the corporate veil. To wit, the Rule B claimants all allege that Shinhan is liable for the obligations of Daebo because it is the alter-ego of Daebo.

6.      The Rule B Claimants' attachment of Shinhan's property, the Vessel, has been upheld against challenge by the United States District Court for the Eastern District of Louisiana (**"Louisiana Court"**).  The Louisiana Court has found there is probable cause to support the Rule B Claimants' seizure of the Vessel and the Rule B Claimants' allegations against Shinhan.[3]

7.      Daebo is a mere lessor of the Vessel and subject to the relevant provisions of the DRBA, its rights as such may well be terminated by either the Foreign Debtor or Shinhan in the Korean Bankruptcy proceeding in the near future. Accordingly, the Vessel is <u>not</u> an asset of the Daebo estate in the Korean Proceeding and cannot be liquidated or sold to satisfy Daebo creditor claims in that proceeding.

8.      It is fundamentally untrue that the Rule B Claimants will obtain an advantage over other Daebo creditors because the other Daebo creditors are not entitled to the Vessel since the Vessel is not part of the Daebo estate.  There is absolutely no prohibition on and nothing improper with respect to creditors of a debtor pursuing their rights and seeking to impose liability against a non-debtor entity – particularly where that entity (Shinhan) is not even an affiliate or subsidiary of the debtor. As such, the Louisiana Action concerns Shinhan, not Daebo, and the Rule B Claimants have every right to pursue claims against Shinhan in the United States and around the world.

---

[3] Court Order, Richardson *Steverdoring & Logistics Services, Inc. v. Daebo International Shipping Co. Ltd. et al.*, No. 2:15-cv-490 (E.D.La. March 2, 2015) (Doc. No. 24).

2

9.    Petitioner's unprecedented and unsupported request for Vacatur Relief will deprive the Rule B Claimants of their secured status with respect to Shinhan, not Daebo. The Rule B Claimants' secured status is, as the Second Circuit Court of Appeals has observed, a constitutionally protected interest. *See generally, In re Treco,* 240 F.3d 148 (2d Cir. 2001).

10.    The Vacatur Relief requested is unprecedented because (i) no court has ever vacated an attachment pursuant to 11 U.S.C. § 1519, and (ii) no court has ever vacated an attachment of a non-debtor's vessel or property simply because a debtor or a foreign debtor maintained a lease or charter with respect to the Vessel.

11.    The Vacatur Relief is unsupportable for the following reasons:

a.    vacatur of an attachment is a final and irreversible remedy and 11 U.S.C. §1519 only authorizes remedies of a provisional nature;

b.    Chapter 15 does not authorize this Court to vacate an attachment of a non-debtor's property, the Vessel, or turnover a non-debtor's property to the debtor's foreign representative; and

c.    the balance of equities in this case weigh strongly in favor of the Rule B Claimants because –

i.    the harm to the Rule B Claimants if the attachments are wrongly vacated on a provisional basis is irreversible and irreparable because the Vessel will leave the country and be placed beyond the reach of this Court and the Louisiana Court,

ii.    the harm to the Foreign Debtor associated with continuing the attachment both provisionally and generally is not bankruptcy-specific – it is no different than the harm all parties associated with Rule B attachments generally suffer (including shippers, middle charterers and buyers),

3

iii. the Foreign Debtor is actually protected from the particular harm of having an idle vessel because even on the assumption that the vessel is off-hire the Foreign Debtor' upstream lease obligations to Shinhan are suspended; and

iv. Daebo is not liable for the Vessel's cargo because the Vessel is attached on account of Shinhan's status as alter ego, the Vessel's Charterer Dana Shipping & Trading S.A. ("**Dana**") and Cargill [full name] loaded the vessel knowing it was under attachment, and soybeans are a non-perishable commodity.

12.     In sum, 11 U.S.C. § 1519 does not authorize the relief sought, Petitioner cannot demonstrate a probability of success on the merits, and the equities weigh strongly in favor the Rule B claimants.  Accordingly, the Section 1519 Vacatur relief Petitioner seeks must be denied.

## STATEMENT OF FACTS

### A.    The Parties

13.     Daebo is a foreign entity duly organized, created and existing pursuant to the laws of a foreign sovereign, and was and is engaged in the business of owning, operating, managing, and/or chartering vessels as an ocean carrier.  Petitioner alleges and has presented documents indicating that Daebo is currently in proceedings under the Korean Rehabilitation and Bankruptcy Act ("**DBRA**") in Korea.

14.     Shinhan is a foreign entity duly organized, created and existing pursuant to the laws of a foreign sovereign, and was and is engaged in the business of providing credit-specialized financial services, commercial financing, corporate restructuring, and project financing services.

15.     Richardson is a United States entity that provides stevedoring services to vessel owners, lessors and charterers in the United States. Richardson provided stevedoring services in the United States to Daebo from October 2014 to the present pursuant to a maritime contract, for

4

which services Richardson has not been paid.[4]  On February 14, 2015, Richardson filed a Rule "B" Attachment proceeding in the Louisiana Court seeking and obtaining an attachment of Shinhan's property, the Vessel, on the grounds, as more fully set forth in the amended complaint, that Shinhan is the alter ego and fraudulent transferee of Daebo. *See Richardson Stevedoring & Logistics Services, Inc. v. Shinhan Capital Co. Ltd. et al.*, 2:15-cv-00490-MLCF-MBN.  On February 15, 2015, Judge Martin L.C. Feldman granted Richardson's Writ of Attachment and Garnishment.  Richardson is a secured creditor in respect of its claim against Shinhan in the amount of $1,632,285.25.

16.    SPV is a foreign company that is the owner of the M/V KACEY, a vessel chartered to Daebo, and stands in the shoes of numerous United States suppliers of necessaries to Daebo in respect of the M/V KACEY, which debts SPV has paid on Daebo's behalf.  As more fully set forth in SPV's amended complaint, Daebo has breached its charter with SPV and placed SPV in a circumstance where it was forced to pay Daebo's post-Korean-petition debts to avoid the Rule "C" arrest of the M/V KACEY by United States "necessaries" vendors. On February 16, 2015, SPV filed a Rule "B" Attachment proceeding in the Louisiana Court seeking and obtaining an attachment of Shinhan's property, the Vessel, on the grounds, as more fully set forth in the amended complaint, that Shinhan is the alter ego and fraudulent transferee of Daebo. *See SPV 1 LLC v. Shinhan Capital Co. Ltd. et al.* 2:15-cv-000494-MLCF-MBN.  On February 18, 2015, Judge Martin L.C. Feldman granted SPV's Writ of Attachment and Garnishment.  SPV is a secured creditor in respect of its claim against Shinhan in the amount of $578,328.04.

---

[4] Daebo engaged Richardson to discharge inbound cargos of steel products from six (6) Daebo owner, operated, or charted vessels in  accordance with previously established stevedoring and freight handling rates Daebo agreed to through nomination of Richardson as its stevedore. Daebo nominated Richardson to discharge the M/V HAWK, M/V CMB BIWA, M/V UBC LONGKU, M/V SHOU CHEN SHAN, M/V GLORIANA, and M/V TAI HAPPINES.

17.    On December 18, 2014, Jaldhi entered into a Charter Party with Daebo for the sub-time charter of the M/V CYGNUS OCEAN to Daebo for the carriage of cargo from Subic Bay, Ho Chi Minh and Pohang to Houston, Texas, which agreement Daebo breached.  On March 9. 2015, Jaldhi filed a filed a Rule "B" Attachment proceeding in the Louisiana Court seeking and obtaining an attachment of Shinhan's property, the Vessel, on the grounds as more fully set forth in its complaint, that Shinhan is the alter ego and fraudulent transferee of Daebo.  *See Jaldhi Overseas Pte. Ltd. v. Shinhan Capital Co. Ltd. et al.* 2:15-cv-00758-MLCF-MBN.  On March 10, 2015, Judge Eldon E. Fallon entered an order granting Jaldhi's Writ of Attachment and Garnishment.  Jaldhi is a secured creditor in respect of its claim against Shinhan in the amount of $516,512.00.

18.    Collectively, the Richardson, SPV and Jaldhi actions against Shinhan are referred to as the "**Louisiana Action**."

19.    The Rule B Attachments against Shinhan and the Vessel were challenged on the ground that there was not probable cause that Shinhan is the alter ego/fraudulent transferee of Daebo and Shinhan should be liable for Daebo's debts.  On March 3, 2015, the Louisiana Court issued a reasoned, twelve page decision denying the motion to vacate the Rule B Attachment of Shinhan's property, the Vessel.

**B.    The Vessel is Not Property of the Foreign Debtor's Estate**

20.    Shinhan is the registered owner of the Vessel, as Shinan admitted today.  As admitted by Petitioner, Daebo is a mere lessor or charterer of the Vessel.  Today, Shinhan filed a notice of appearance in which it stated that it is "owner of the vessel." In turn, Dana shipping has sub-chartered the vessel from Daebo and there may be one more sub-charters in respect of the subject voyage.  There has been no allegation that the Vessel is the property of the Foreign Debtor's estate or that the foreign debtor maintains any equity in the Vessel whatsoever.

6

21.     The Vessel is currently laden with a cargo of soy beans. Soy beans are non-perishable and certainly will not be impacted adversely if provisional relief is denied. *See generally*, Declaration of Boyce Butler ("Butler Decl."), dated March 18, 2015. Maritime attachments are a routine feature of admiralty jurisprudence and are particularly common in port regions such as Louisiana. Admiralty Courts are routinely faced with circumstances such as the one at bar.

**ARGUMENT**

**APPLICABLE LEGAL STANDARD**

22.     11 U.S.C. § 1519(a) provides that "[f]rom the time of filing a petition for recognition until the court rules on the petition, the court may, at the request of the foreign representative, where relief is <u>urgently</u> needed to protect the <u>assets</u> of the debtor or the interests of creditors, grant relief of a <u>provisional</u> nature..." (emphasis supplied); *see In re Worldwide Education Serv. Inc.,* 494 B.R. 494 (C.D.Cal. 2013) (providing perhaps the most in-depth analysis of the requirements and provisions of 11 U.S.C. § 1519 to date and denying the requested 11 U.S.C. 1519 relief).

23.     Section 1519(e) provides: "The standards, procedures, and limitations applicable to an injunction shall apply to [a request for provisional] relief under this section." 11 U.S.C. §1519(e).

24.     As noted in *Worldwide Education,* "The test that a plaintiff must meet to obtain a preliminary injunction was stated by the Supreme Court as follows: 'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Worldwide Education,* 494 B.R. at 499,

7

*citing Winter v. Natural Resources Defense Council,* 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008).[5]

25.    Bankruptcy courts routinely issue provisional stays of attachments, executions and litigation pursuant to 11 U.S.C. § 1519 in both maritime and non-maritime relief cases, and such is provided <u>automatically</u> pursuant to 11 U.S.C. § 1520 upon recognition as a foreign main proceeding.    By contrast, the Vacatur Relief Petitioner seeks would be authorized (if at all) pursuant to 11 U.S.C. § 1521, which governs discretionary relief.

26.    As such, to obtain the provisional Vacatur Relief that Petitioner seeks, Petitioner must demonstrate that:

    a.    The relief sought authorized by 11 U.S.C. § 1519;

    b.    that the petitioner will suffer irreparable harm absent the <u>provisional</u> relief;

    c.    that there is a probability of success with respect to recognition of the Korean Daebo Bankruptcy as a foreign main proceeding;

    d.    this Court has the power to vacate a maritime attachment of a non-debtor's property where the sole interest of the debtor in that property is a lease that may or may not be rejected or terminated;

    e.    there is probability of success that upon an application by Petitioner vacatur of the maritime attachment of Shinhan's Vessel, where the sole interest of the debtor in that property is a lease that may or may not be rejected or terminated, would be granted; and

    f.    that the balance of hardships weighs in favor of granting the provisional relief.

27.    With the possible exception of (c), Petitioner fails to meet these requirements with respect to the Vacatur Relief and therefore it should be denied.

---

[5] *See also Tinnerello & Sons, Inc. v. Town of Stonington,* 141 F.3d 46, 51-52 (2d Cir. 1998); *In re Lines,* 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (the party seeking provisional relief must show that it is likely to suffer irreparable and imminent harm if temporary injunctive relief is not granted and either (i) likelihood of success on the merits (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the provisional relief).

### MARITIME ATTACHMENTS AND THE RULE B CLAIMANTS' SECURED STATUS

28.    Article III of the United States Constitution, in extending federal jurisdiction "to all cases of admiralty and maritime jurisdiction" gives district courts the inherent power to grant maritime attachments.  U.S. Const. art. III § 2.  Maritime attachment is an ancient remedy that remains a "characteristic feature" of U.S. maritime law.  *See Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.*, 85 F.3d 44, 47 (2d Cir. 1996); *see also Atkins v. The Disintegrating Co.*, 85 U.S. 272, 303 (1874) (admiralty courts have issued maritime attachments "as far back as the authentic history of those tribunals can be traced.").  The right to maritime attachment is codified in Rule B of the Supplemental Admiralty and Maritime Rules of the Federal Rules of Civil Procedure.

29.    The purpose of maritime attachments is to gain security for maritime litigants' claims and to obtain *quasi in rem* jurisdiction over the defendant whose property is attached.  In this case, only Shinhan's property is attached and *quasi in rem* jurisdiction exists only over Shinhan.  The importance and nature of maritime attachments is set forth in the below quotes from venerable and leading maritime attachment cases.

> Maritime law deals primarily with ships that sail the seven seas.  A ship may be here today and gone tomorrow, not to return for an indefinite period, perhaps never.  Assets of its owner, including debts for freights, as in this case, within the jurisdiction today, may be transferred elsewhere or paid off tomorrow.  It is for these reasons that maritime actions *in rem*, libelling a ship or other assets of a defendant, Supplemental Rule C, or attachment in actions *in personam*, Supplemental Rule B, were developed.  ***These reasons are as valid today as they ever were.***  Particularly in the case of debts and credits, such as the debt for freight that was attached in this case, they are necessary and valid today.  In this electronic age, freights owing to a charterer, such as Sanko, can be transferred instanter, by electronic orders, from, say, Honolulu to, say, a numbered bank account in a bank in Switzerland or some other non-maritime haven.  The need to attach now and notify later is as great now as it ever was, if not greater.  A ship can quietly slip its moorings and depart the jurisdiction.  It

9

can easily take with it such tangible property as may be within the jurisdiction. And credits can be quickly transferred elsewhere.[6]

Particularly in light of the **_unique corporate arrangements that exist in the maritime industry_** and the need for uniformity of maritime laws, the federal maritime law has adopted rules governing corporate liability, irrespective of whether corporate entities expected, *ex ante*, that their corporate relationship would be scrutinized in the context of a maritime action.[7]

In a world of **_shifting assets_**, numerous **_thinly-capitalized subsidiaries_**, flags of convenience and flows of currencies, **_maritime attachments have particular importance_**.[8]

30.    More than sixty years ago, the United States Supreme Court determined that causes of action predicated on piercing the corporate veil were cognizable in admiralty. *See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.*, 339 U.S. 684 (1950). In fact, fraudulent transfer was the original basis upon which the corporate veil was pierced in *Swift*. Since that time, maritime litigation and attachments predicated upon piercing the corporate veil have been routine and commonplace. *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d. Cir. 2008); *Chan v. Society Expeditions,* 123 F.3d 1287, 1294 (9th Cir. 1997); *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 342 (2d Cir. 1986).

31.    Just a few months ago, the Eastern District of Virginia pierced the corporate veil of a registered vessel owner in a maritime attachment case where one of the principal allegations was that assets of a bankrupt Greek entity had been fraudulently transferred to the vessel owner.

---

[6] *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir. 1982) (emphasis added).

[7] *In re M/V RICKMERS GENOA Litigation*, 643 F. Supp. 2d 553, 557 (S.D.N.Y. 2009) (multiple citations omitted) (emphasis added).

[8] *Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren Ltd.,* 485 F. Supp. 2d 399, 404 (S.D.N.Y. 2007) (citing *Aurora Maritime Co. v Abdullah Mohamed Fahem & Co.,* 85 F.3d 44 (2d Cir. 1996)) (emphasis added).

*See Flame S.A. v. Freight Bulk Pte Ltd.,* 39 F. Supp. 3d 769 (E.D.Va. 2014). The maritime plaintiffs in that case were creditors of the bankrupt Greek entity.

32.    In this case, the maritime attachments obtained by the Rule B Claimants against Shinhan's property are perfectly consistent with the intent and purpose of Rule B. Namely, the Rule B Claimants are entitled to obtain security and *quasi in rem* jurisdiction and security in respect of their veil-piercing claims against Shinhan.

33.    Having obtained maritime attachments that were subsequently upheld by the Louisiana Court, the Rule B Claimants are secured creditors in respect of Shinhan.

34.    In the case of *In Re The International Banking Corporation,* 439 B.R. 614 (Bankr. S.D.N.Y. 2010) a seminal Chapter 15 attachment case in this district, Judge Bernstein determined that an attaching creditor is a secured creditor for the purposes of chapter 15 and vacatur of attachments pursuant to 11 U.S.C. § 1521. In *In re Treco,* 240 F.3d 148, 160 (2d Cir. 2001), a case under former section 304, the Second Circuit held that the property rights of secured creditors have constitutional protections.

## POINT I.

## 11 U.S.C. § 1519 DOES NOT AUTHORIZE VACATUR OF AN ATTACHMENT

35.    Petitioner here seeks to vacate the Rule B Claimants attachments and extinguish their security with respect to their claims against Shinhan on three days' notice, in a questionable venue, (*see* 28 U.S.C. 1410)[9], arguing that the provisional Vacatur Relief requested is routine in Chapter 15 cases. That is simply not true.

---

[9] The Rule B Claimants acknowledge that Chapter 15 Recognition is likely to be granted. However, that does not mean that Chapter 15 Recognition should or will be granted in the captioned matter. The Rule B Claimants reserve their rights to object to the recognition based upon the fact that this proceedings was filed in an improper venue pursuant to 28 U.S.C. § 1410.

36.    There is no question that stays of litigation and further attachments have been
routinely granted in both maritime and non-maritime cases.  However, no chapter 15 Court has
ever vacated an attachment – maritime or otherwise -- pursuant to 11 U.S.C. § 1519.

37.    At the same time, numerous maritime and non-maritime chapter 15 cases
involved litigation seeking to vacate or modify pre-chapter attachments and injunctions pursuant
to 11 U.S.C. § 1521.  *See In re Atlas Shipping A/S*, 404 B.R. 726 (Bankr. S.D.N.Y. 2009); *In re
Britannia Bulk PLC*, 08-14543 (Bankr. S.D.N.Y. 2008); *In re Britannia Bulkers A/S*, 08-15187
(Bankr. S.D.N.Y.) 2009 WL 2876250 (S.D.N.Y. Sept. 8, 2009); *In re The International Banking
Corporation*, 439 B.R. 614 (Bankr. S.D.N.Y. 2010); *In re Transfield ER Cape*, 10-16270
(Bankr. S.D.N.Y.), *In re Korea Line Corp.*, 11-10789 (Bankr. S.D.N.Y.); *In re Millard*, 501 B.R.
644 (Bankr. S.D.N.Y. 2013).

38.    The reason is obvious.  11 U.S.C. § 1519 only permits courts to grant remedies
of a provisional nature.  As Petitioner admits, the purpose of provisional remedies is to maintain
the status quo (*see* Petitioner's Provisional Application at P 11).  The vacatur of an attachment is
a final remedy.  It is an appealable decision.  More importantly, in maritime cases, vacatur is
final in a more practical sense.  Once an attachment is vacated – particularly a maritime
attachment of a vessel – the litigation is dismissed because *quasi in rem* jurisdiction is lost.
Here, if the maritime attachments are vacated, the precise property in this case, the Vessel will be
placed beyond this Court's and the Louisiana Court's jurisdiction.  Thus, a decision vacating the
attachment is irreversible.

39.    The Vacatur Relief Petitioner seeks is final, not provisional relief and is not
authorized by 11 U.S.C. 1519.  Petitioner has presented no authority or precedent in support of

12

its request for Vacatur Relief pursuant to 11 U.S.C. § 1519 and none exists. The Vacatur Relief requested should be denied.

## POINT II.

### PETITIONER HAS FAILED TO DEMONSTRATE IRREPARABLE HARM IF THE PROVISIONAL RELIEF IS NOT GRANTED

40.    Petitioner has presented no credible reason as to why it will suffer irreparable harm if the Vacatur relief is not granted now.

41.    This Circuit has deemed the threshold showing of "irreparable harm" to be the "single most important prerequisite[.]" *Reuters Ltd. v. United Press Int'l*, 903 F.2d 904, 907 (2d Cir. 1990). Irreparable harm exists where a claim "cannot be compensated merely by money damages," *Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357, 367 (1997) (internal citation omitted), and "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Intern. Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Irreparable harm does not exist here.

42.    The Vessel has been under attachment since February 15, 2015. Daebo ceased paying its lease obligations since the commencement of the Korean Bankruptcy proceeding on February 13, 2015.

43.    The hearing on Petitioner's application for recognition of the Korean Daebo Bankruptcy Proceedings as a foreign main proceeding is scheduled for April 7, 2015. It is not clear how any of Daebo's interests will be "irreparably harmed" in the next three weeks.

44.    Subject of course to this Court's availability, a non-emergency, non-provisional motion by Petitioner could be briefed and heard by the end of April and perhaps earlier.

13

45.    In sum, the provisional relief requested is not "urgently needed" to protect the foreign debtor as 11 U.S.C. § 1519 required and the foreign debtor will not suffer irreparable harm if the relief is denied. *See, e.g., Worldwide Education*, 494 B.R. at 499.

POINT III.

### PETITIONER HAS FAILED TO DEMONSTRATE A PROBABILITY OF SUCCESS ON THE MERITS THAT THE ATTACHMENT WOULD BE VACATED AFTER RECOGNITION

46.    Petitioner has not cited a single case in which a maritime or non-maritime attachment of a non-debtor's property has been vacated either in a chapter 15 proceeding, a former section 304 proceeding, or even a domestic bankruptcy proceeding. Yet, Petitioner presumptuously requests that this unprecedented, irreversible relief be granted on an emergency and provisional basis.

47.    It is undisputed that the Vessel is not the property of the Foreign Debtor – the Vessel's registered owner is Shinhan. The Foreign Debtor merely maintains a lease interest in the Vessel that may well be terminated or rejected in accordance with the provisions of the DBRA and Korean law.

48.    In each and every case in which a court has vacated or considered vacating a maritime or non-maritime attachment in deference to a foreign insolvency proceeding, the property under attachment was the foreign debtor's property. *See In re Culmer,* 25 B.R. 621, 627-28 (Bankr. S.D.N.Y. 1982); *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709, 713-14 (2d. Cir. 1987); *Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB,* 773 F.2d, 452, 459 (2d Cir. 1985); in *In re Atlas Shipping A/S,* 404 B.R. 726, 735-737 (Bankr. S.D.N.Y. 2009); *In re Milovanovic,* 357 B.R. 250 (Bankr. S.D.N.Y. 2006); *In re Korea Line Corp.,* 11-10789 (Bankr. S.D.N.Y.)*; In re Transfield ER Cape Ltd.,* 10-16270 (Bankr. S.D.N.Y.).

49.     By contrast there is absolutely no precedent for the proposition that a pre-existing attachment of a non-debtor's property should be vacated because a foreign debtor is merely inconvenienced by it.

50.     With respect to those cases that were decided after the enactment of chapter 15, the vacatur of attachments were uniformly granted pursuant to 11 U.S.C. § 1521(b). 11 U.S.C. § 1521(b) allows for assets of the debtor to be turned over to the foreign representative. It does not provide for turnover of assets of a non-debtor to be similarly turned over. In fact, the Second Circuit has made clear under prior section 304 that if there is even a *bona fide* dispute as to whether the assets in question are those of the debtor, a threshold determination as to ownership must be made before effecting turnover relief. *See In re Koreag,* 961 F.2d 341, 348 (2d Cir. 1992) (the Bankruptcy Court must make a "threshold determination" under local law as to property ownership before ordering turnover of property to a foreign proceeding); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,* 412 F.3d 418 (2d Cir. 2005) (affirming the *Koreag* rule that that U.S. courts may resolve *bona fide* questions of property ownership).

51.     The Rule B proceedings in question are *quasi in rem* proceedings against Shinhan with respect to property owned by Shinhan. The question that will be litigated in the Louisiana Court is whether Shinhan is liable for Daebo's debts by virtue of maritime veil-piercing liability principals. Daebo is a nominally named defendant over whom the Louisiana Court does not have *quasi in rem* jurisdiction because Daebo does not have property in that district. Any judgment rendered by the Louisiana Court will affect Shinhan only and be limited to the value of the Vessel.

15

52.    Petitioner's argument that Daebo must "defend" the action in the Louisiana Court by March 20, 2015 is misplaced. Daebo need not defend the action at all. It is Shinan that has been accused of being an alter-ego of Daebo by virtue of, *inter alia,* the fraudulent transfer of the Vessel. It is Shinhan, not Daebo's role to defend these allegations. Any veil piercing findings in the Louisiana Court will not impact Daebo.

53.    Indeed, it is very interesting that Shinhan has not appeared before the Louisiana Court until today, but has left the charterers of the vessel, including Dana and now Daebo, to attempt to defend the attachment of Shinhan's property.[10]

54.    Under the circumstances, there is no precedent or statute that would permit this Court to wholly vitiate the secured interests of the Rule B Claimants with respect to Shinhan by vacating the attachment of the property of a non-debtor.

55.    Indeed, as the Rule B Claimants will be more fully addressing in their limited main recognition opposition, simply because a debtor is nominally implicated in a veil-piercing action where the underlying claim is that of a debtor does not mean the action should be stayed. Similarly, simply because a vessel is chartered by a debtor does not mean that the vessel should be protected from arrest and attachment from non-debtor claims.

56.    It is axiomatic that bankruptcy stays apply only to the debtor and the debtor's assets absent extraordinary circumstances. *See, e.g., Ebin v. Kangadis Family Mgmt,* No. 14-cv-1324, 2014 WL 4638700, at *2 (S.D.N.Y. Sept. 28, 2014) (stay entered against bankrupt debtor-defendant does not stay or preclude action against non-debtor alter-egos under veil-piercing theory) (citing *Gucci America Inc. v. Duty Free Apparel, Ltd.,* 328 F. Supp. 2d 439, 441 (S.D.N.Y. 2004) and *Teachers Ins. & Annuity Ass'n v. Butler,* 803 F.2d 61, 65 (2d Cir. 1986)).

---

[10] In connection with this Chapter 15 proceeding, the Rule B claimants will be requesting all correspondence as between Daebo and Shinan concerning the Vessel attachment and this Chapter 15 Application be produced. Moreover, if Daebo were to post a bond to secure the Vessel's release, this would solve the problems of all parties.

16

57.     Meanwhile, although there is a single, unreported decision in this district to the contrary, a charterer's mere use of a vessel does not and should not implicate the automatic stay against attachments with respect to claims against the vessel *in rem* (i.e. Rule C Maritime Lien claims) and claims against the vessel's owner *quasi in rem* (i.e. the Rule B claims at issue here).

58.     To begin, there is fundamental and as yet unresolved tension between the Bankruptcy Code and the maritime law. *See generally* Stewart F. Peck, Navigating the Murky Waters of Admiralty and Bankruptcy Law, 87 Tul. L. Rev. 955 (2013)

59.     Second, the Rule B Claimants submit that under the circumstances, their attachment of a non-debtor-owned vessel is akin to a Rule C maritime lien claim against a debtor-owned vessel. The reason for this is that a "vessel" is considered in the admiralty law to be a juristic person. *See In re Millenium Seacarriers,* 419 F.3d 83, 93 (2d Cir. 2005); *In re Chugach Forest Prod. Inc.,* 23 F.3d 241 (9th Cir. 1994); *In re Riffe Petroleum Co.* 601 F.2d 1385, 1389 (10th Cir. 1979).

60.     Indeed, it is particularly relevant that two circuit courts have found that arrest of a vessel to foreclose a Rule C maritime lien claim in which a debtor has a chartered or actual interest does not violate the automatic stay.     *In Riffe Petroleum* the Tenth Circuit held that a creditor did not violate the bankruptcy stay by arresting a vessel under charter to the debtor. *Riffe Petroleum,* 601 F.2d at 1390 (holding that "[t]he seizure of the ship temporarily affected [the debtor]'s right to use it.  "Affect" is not enough to justify the [bankruptcy court's] use of contempt power... "Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate").

61.     In *Chugach,* the debtors hired a stevedorer to load logs and lumber onto a vessel and then filed a chapter 11 case before paying the stevedorer for these services. *Id.* at 242. The

17

debtors' failure to pay the stevedore gave rise to a maritime lien against the vessel. The debtors later hired the stevedore to load another shipment of logs and lumber onto the same vessel, and the stevedore executed a Rule C In Rem Arrest against the vessel after loading it with the debtors' logs and lumber. *Id.* Despite acknowledging the vessel contained the debtors' property, the Chugach court still determined the automatic stay was inapplicable to the Rule C In Rem Arrest.

62.     As noted above, there is a reasonable analogy between the Louisiana Action, in which the Rule B Claimants are asserting a veil-piercing claim against the Vessel's owner and have attached the vessel, and the Rule C claims that are asserted directly against the Vessel.

63.     Given that the automatic stay does not prevent a post-petition Rule C arrest of a ship chartered to a debtor, there is clearly no basis to vacate a valid attachment of a vessel that is merely leased by the debtor in respect of a claim against the vessel's owner.

## POINT IV.

## THE BALANCE OF EQUITIES WEIGHS DECIDEDLY
## IN THE RULE B CLAIMANTS FAVOR

64.     As noted above, the harm to the Rule B Claimants if the provisional relief is improperly granted is complete and irreversible evisceration of their secured status with respect to Shinhan.

65.     By contrast, the harm to the Foreign Debtor associated with declining to grant the provisional relief is nominal, at best. As an initial matter, the Foreign Debtor is free to make its motion in the non-provisional context in a few weeks assuming that Chapter 15 recognition is granted.

66.     There is no meaningful harm that will result to the Foreign Debtor by the Vessel's continued attachment. Because its upstream lease obligations are suspended, it is not paying for

18

a vessel that it cannot use.   Any inconvenience associated with the attachment pales in comparison to the consequences of improper vacatur and is not an inconvenience that is different than that faced by any other party in the charter chain.   Vessel attachments and arrests are a fact and intrinsic feature of maritime commerce world-wide.   This attachment is not causing Daebo any harm *because* it is a foreign debtor, rather because it is link in this particular soybean charter chain.

67.    Finally, soy is not a perishable commodity.    Under normal conditions of temperature and humidity, the life of a cargo of soy beans is between three (3) to four (4) months.  *See* Butler Decl., at ¶ 5.  Thus, there will be no damage caused by the short-term denial of the provisional relief sought.    In any case, because Dana and Cargill knowingly and improperly loaded cargo onto an attached vessel, so this court should not consider any prejudice of their own making relevant to tis determination here.   Rather, it is those parties' responsibility to remove the cargo or convince the vessel's owner, Shinhan, to post a bond for the Vessel's release.

19

<u>CONCLUSION</u>

68.    For the foregoing reasons, the provisional Vacatur Relief sought by Petitioner

should be denied.

Dated: New York, New York
          March 18, 2015                                    Respectfully Submitted,

                                                   HOLLAND & KNIGHT LLP
                                                   *Attorneys for SPV 1, LLC, Jaldhi Overseas*
                                                   *PTE. Ltd., & Richardson Stevedoring &*
                                                   *Logistics Services, Inc.*


                                                   By:  */S WARREN E. GLUCK*
                                                        Warren E. Gluck
                                                        Barbra R. Parlin
                                                        Duvol M. Thompson

                                                   31 West 52nd Street
                                                   New York, NY 10019
                                                   Tel:  212-513-3200
                                                   Fax:  212-385-9010

#34997186_v5

20