# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LARK SHIPPING S.A. | * CIVIL ACTION |
| | * |
| VERSUS | * NO. |
| | * |
| DAEBO INTERNATIONAL SHIPPING | * SECTION " " |
| CO., LTD. AND SHINHAN CAPITAL | * |
| CO., LTD. | * MAGISTRATE (   ) |
| | * |

## VERIFIED COMPLAINT

Plaintiff, Lark Shipping S.A., ("Lark Shipping" or "Plaintiff"), appearing through undersigned counsel and for its First Amended Verified Complaint pursuant to Rule 15(a) and Rule 15(c)(1)(b) against Daebo International Shipping Co., Ltd. ("Daebo") and Shinhan Capital Co., Ltd ("Shinhan"; collectively, "Defendants"), alleges, upon information and belief, as follows:

1.

This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is brought pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. Jurisdiction is proper under 28 U.S.C. § 1333, as hereinafter more fully set forth. This action is brought pursuant to 9 U.S.C. § 8 for the purpose of obtaining security for a foreign arbitration proceeding. Venue is proper in this Court because Defendants have property located within this district, *to wit*, the M/V DAEBO TRADER.

2.

At all material times to this action, Lark Shipping, was and still is a corporation or other business entity organized and existing under the laws of a foreign country, and was and is the registered owner of the M/V MAGNUM FORTUNE (the "MAGNUM FORTUNE").

3.

At all material times to this action, Shinhan was and is a corporation or other business entity organized and existing under the laws of a foreign country.

4.

At all material times to this action, Daebo was and is a corporate or other business entity organized and existing under the laws of a foreign country.

5.

On or about January 15, 2014, Lark Shipping, as owner/operator of the MAGNUM FORTUNE, entered into a Government Form charter party with Daebo whereby Lark Shipping agreed to charter the MAGNUM FORTUNE to Daebo for a period of about 65 days (without guarantee).  As is customary, the charter agreement was memorialized in (1) a fixture recap, (2) a *pro forma* charter party, and (3) rider clauses, which together constitute and are hereinafter collectively referred to as the "MAGNUM FORTUNE Charter Party."  *See* M/V MAGNUM FORTUNE Fixture Recap, attached as Exhibit A (the "Fixture Recap"); Pro Forma Government Form Charter Party, attached as Exhibit B ("Government Form Charter Party"); M/V MAGNUM FORTUNE Rider Clauses, attached as Exhibit C ("Rider Clauses").

6.

Pursuant to the MAGNUM Charter Party, Daebo was obligated to pay Lark Shipping $5,000 USD per day or portion pro rata thereof in exchange for the use of the MAGNUM

FORTUNE through the first sixty-five (65) days of the charter, and thereafter was obligated to pay Lark Shipping $9,500 USD per day or portion pro rata thereof for all additional days until termination of the charter. *See* Fixture Recap, p. 5.

7.

In addition to charter hire as specified above, the MAGNUM FORTUNE Charter Party obligated Daebo to pay to Lark Shipping the value of all bunkers onboard the MAGNUM FORTUNE upon the commencement of the charter, which sum was required to be paid within three (3) days of delivery of the vessel by Lark Shipping to Daebo under the charter party. *See* Fixture Recap, p. 5; Rider Clauses, Cl. 35. In addition, the MAGNUM FORTUN Charter Party further requires Daebo to "provide and pay for all fuel except as otherwise agreed, Port Charges, Compulsory and Customary Pilotages, Canal/River Dues and Tolls, Towages, Agencies, Commissions, compulsory Garbage Removal, compulsory Watchmen, Consular Charges… and all other usual expenses…." *See* Government Form Charter Party, Cl. 2.

8.

Clause 18 of the applicable Government Form Charter Party provides that "Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel." *See* Government Form Charter Party, Cl. 18.

9.

On January 20, 2015, Lark Shipping delivered the MAGNUM FORTUNE into Daebo's service pursuant to the MAGNUM FORTUNE Charter Party. Upon her delivery under the charter party, the MAGNUM FORTUNE had onboard 452.3900 metric of Fuel Oil and 63.770

metric tons of Diesel Oil, which bunkers were valued at \$140,240.90 and \$41,450.50, respectively.

<div align="center">10.</div>

In breach of its obligations under the MAGNUM FORTUNE Charter Party, Daebo failed to pay to Lark Shipping the value of bunkers onboard the vessel upon Lark Shipping's delivery of the vessel into Daebo's service under the MAGNUM FORTUNE Charter Party. Such payment was due within three (3) days of the vessel's delivery, and is therefore past due.

<div align="center">

**ALTER EGO ALLEGATIONS**

11.</div>

Lark Shipping, by this reference, incorporates all foregoing allegations as Alter Ego Allegations as if repeated herein *in extenso*.

<div align="center">12.</div>

Upon information and belief, Shinhan is merely an alter ego of Daebo and/or colluded with Daebo to perpetrate a fraud whereby Shinhan became the "registered owner" of the DAEBO TRADER.[1] This fraud was carried out through a sham "sale-leaseback" transaction in which Daebo fraudulently transferred title in the vessel to Shinhan, while in fact retaining all indicia of ownership in itself.[2] Daebo is the reported group owner, ship manager, and operator of the DAEBO TRADER (IMO No. 9230153), and the reported disponent owner of Shinhan.[3] Despite the fact that title to the vessel is in the name of Shinhan, Daebo retains control and

---

[1] *See* Exhibit D, verifying that on January 5, 2010, Daebo Shipping Co., Ltd. merged with Daebo International Shipping Co., Ltd. As of that date, Daebo Shipping Co., Ltd., was no longer in existence and transferred all of its assets, liabilities, and rights and duties to Daebo International Shipping Co., Ltd. Daebo International Shipping Co., Ltd therefore is the successor or group owner of the DAEBO TRADER.
[2] *See* Certificate of Entire Registered Items for M/V DAEBO TRADER of Jeju City, Jeju Special Province (239056 Tons), attached as Exhibit E.
[3] *See* Lloyd's Register – Fairplay Fleet List Report by Group Owner for Daebo Shipping Co. Ltd., attached as Exhibit F.

beneficial use of the DAEBO TRADER, for the purpose of placing the DAEBO TRADER beyond the reach of Daebo's creditors. Shinhan is the alter-ego and fraudulent transferee of Daebo and therefore the corporate veil of Shinhan should be equitably pierced and the vessel, nominally and fraudulently registered in the name of Shinhan, should be attached to satisfy the debts of Daebo. As such, there is a sufficient *quasi in rem* claim against Shinhan and the vessel to permit attachment thereof under Admiralty Rule B notwithstanding the alleged transfer of the vessel to Shinhan.

13.

Further, upon information and belief, Shinhan and Daebo act as a single business entity with regards to their relationship to the DAEBO TRADER, with such unity of ownership and interest that no separation exists between them.

14.

Further, Shinhan's registered ownership of the DAEBO TRADER should be disregarded. Upon information and belief, Shinhan is a wholly-owned subsidiary of a bank or one-ship company vehicle set up by a bank. Accordingly, Shinhan is a "brass-plate" company employed on paper to legally own a ship and to limit liability for Daebo, which remains the "real" and/or "beneficial owner of the vessel notwithstanding the fraudulent transaction described herein.

15.

In conclusion, Daebo controls the vessel and colluded with Shinhan (the registered owner of the DAEBO TRADER via a fraudulent transfer) and as such Lark Shipping's claim should be enforced against Shinhan because title of the vessel was granted to Shinhan, a mere financier, where Daebo was still obligated to make mortgage payments. The titling of the vessel in Shinhan's name was a fraudulent transfer and particularly a fraudulent transfer as to Lark

Shipping. Because Shinhan has received title to Daebo's assets without appropriate consideration it is an alter ego and fraudulent transferee with respect to Daebo and should be held liable for Daebo's debts.

### RULE B ALLEGATIONS

16.

Lark Shipping, by this reference, incorporates all foregoing allegations as Rule B Allegations as if repeated herein *in extenso*.

17.

Daebo's failure to pay the charter hire due under the MAGNUM FORTUN Charter Party, as well as its failure to pay expenses of the vessel as set forth above, gives rise to an *in personam* claim for breach of contract in favor of SPV and against Daebo in the principal amount of $181,691.40 (ONE HUNDRED EIGHTY-ONE THOUSAND SIX HUNDRED NINETY-ONE DOLLARS AND 40/100).

18.

Daebo and Shinhan, on information and belief, cannot be found within the jurisdiction of this Court within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure but, as alleged, have goods and chattels within this District subject to seizure, arrest and attachment, namely the DAEBO TRADER, her engines, tackle, apparel, furniture, etc. Further, because Daebo and Shinhan are not found within the district as contemplated under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, SPV is entitled to a Writ of Attachment pursuant to Rule B, executable against Daebo and Shinhan and all of its/their property within the district, including the DAEBO TRADER, her engines, tackle, apparel, appurtenances, equipment, furniture, etc.

WHEREFORE, Plaintiff, Lark Shipping, prays that:

1. This Verified Original Complaint be deemed good and sufficient;

2. Process in due form of law according to the practice of this Honorable Court issue against Daebo and Shinhan, citing them to appear and answer this First Amended Verified Complaint;

3. After due proceedings are had, there be judgment in favor of Lark Shipping and against Daebo and Shinhan in the full amount of Lark Shipping's claims, together with interest, costs, and attorney's fees, as set forth above;

4. Process according to the rules and practices of this Honorable Court in causes of admiralty and maritime jurisdiction issue to attach and seize in the amount sued for Daebo's and/or Shinhan's goods, chattels, credits, monies, and effects of any kind; and

5. Lark Shipping be granted all further relief as justice and equity may permit.

Respectfully submitted,

CHAFFE McCALL, L.L.P.

_____/s/ Alan R. Davis_____
Ivan M. Rodriguez, #22574
Alan R. Davis, #31694
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000

and

Dimitri P. Georgantas
Texas Bar No. 07805100
Federal I.D. No. 2805
801 Travis Street, Suite 1910
Houston, Texas 77002
(713) 546-9800 (Telephone)
(713) 546-9806 (Facsimile)
**Attorneys for Lark Shipping S.A.**

**Certificate of Service**

      I hereby certify that on this ___ day of March, 2015, a copy of the foregoing was served on all counsel of record by ECF filing.

_____

Alan R. Davis

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Lark Shipping S.A. | Daebo International Shipping Co., Ltd; Shinhan Capital Co.; Ltd. |

(b) County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Alan R. Davis; Ivan M. Rodriguez; Chaffe McCall, LLP; 1100 Poydras Street; 2300 Energy Centre; New Orleans, LA 70163; (504) 585-7088;

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☒ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
FRCP Rule B; 9 U.S.C. 8; 28 U.S.C. 1333

Brief description of cause:
Breach of maritime contract (charter party); Admiralty Rule B attachment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 181,691.40

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE Hon. Martin L.C. Feldman

DOCKET NUMBER 15-490

DATE
03/13/2015

SIGNATURE OF ATTORNEY OF RECORD
/s/ Alan R. Davis

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LARK SHIPPING S.A. | * CIVIL ACTION |
| | * |
| VERSUS | * NO. |
| | * |
| DAEBO INTERNATIONAL SHIPPING | * SECTION " " |
| CO., LTD. AND SHINHAN CAPITAL | * |
| CO., LTD. | * MAGISTRATE ( ) |
| | * |

## **AFFIDAVIT**

STATE OF LOUISIANA

PARISH OF ORLEANS

I, Alan R. Davis, being duly sworn, depose and say:

1. I am a member in good standing of the bar of this Honorable Court and an attorney with the firm Chaffe McCall, LLP, attorneys for Lark Shipping, S.A. ("Lark Shipping").

2. I have read the foregoing Verified Complaint and believe the contents thereof to be true. My knowledge and belief are based upon facts and documents supplied by Lark Shipping, as well as my review of said facts and documents.

3. I have personally searched the Louisiana Secretary of State Commercial Division's Corporation Database, telephone assistance in Louisiana, and the internet Yellow Pages, and have determined that Daebo International Shipping Co., Ltd., and Shinhan Capital Co., Ltd. (collectively, "Defendants"), are not incorporated nor registered to do business in this State.

4. In my search, I did not find any listing or reference to an office, place of business, or registered agent of either Defendant in this district or state.

5.   I therefore believe that the Defendants cannot be found within this district.

6.   I make this affidavit on behalf of Lark Shipping because it is a foreign corporation having no local representative.

7.   Pursuant to applicable local rules, Lark Shipping agrees to hold harmless and indemnify the U.S. Marshall and all of his deputies from and against any and all liabilities as a result of attaching the M/V DAEBO TRADER and/or as a result of any movements, cargo operations, or repair work occurring during the attachment.

8.   The conditions for the issuance of a writ of attachment pursuant to Admiralty Rule B exist.

_____
Alan R. Davis

**Sworn to before me this**
**13th day of March, 2015.**

_____
Notary Public

ADELAIDA J. FERCHMIN
NOTARY PUBLIC
STATE OF LOUISIANA
NOTARY ID NO. 91841
COMMISSION EXPIRES AT DEATH

2

>----- Original Message -----

>TELiX: K  03YDP-00 i 102 1425

>Subj: MV MAGNUM FORTUNE / DAEBO - CLEAN FIXTURE RECAP CP DATED 12TH JAN2015
>     (REVISED CP DATE)

FM : KCC(KOREA CHARTERING CO.,LTD.)SEOUL
    ROOM NO. 1406, YUWON GOLDENTOWER,
    53, CHUNGJEONGRO , SEODAEMUN-GU,
    SEOUL, 120-722, KOREA.

FOTIS / SE

GOOD DAY !

PLSD TO CONFIRM CLEAN RECAP ASF : (CP DATED 12TH JAN 2015)

NAME        : MAGNUM FORTUNE

DWT/DRAFT    : SUMMER : 53.631 MT AT 12.490M

FLAG        : LIBERIA

BUILT       : 2009

TYPE        : SELF DISCH - DOUBLE SKINNED/BULK CARRIER

GR/BL       : 2.321.884,61CBFT/2.271.895,16CBFT

HO/HA       : 5 HO/HA

TPC         : 56,4 MT/CM (FOR SCANTLING DRAFT)

CO2 FITTED   : YES

GEAR        : 4X30 TS CR AT HOOK POSITION

GRABS       : 4X12.5 CBM-RADIO REMOTE CONTROL WITH CAPACITY ADJUST

EXHIBIT
A

1

LOA/BREADTH     : 189.99M/32.26M

DEPTH MOULDED  : 17.20M

L.B.P.     : 182.00M

HOLD CAP     :     GRAIN     BALE

                   M      M

       NO1   11.388,58   11.228,33

       NO2   14.292,54   13.933,19

       NO3   13.490,05   13.174,39

       NO4   14.210,45   13.857,90

       NO5   12.369,56   12.138,49

       --------------- ----

       TOTAL  65.750,84   64.332,30


HATCHES DIMENSIONS: NO1 18.86 M X 18.26 M

             NO2+3+4+5 21.32 M X 18.26 M

TYPE OF HATCHES   : MACGREGOR FOLDING TYPE-HYDR.

HOLDS DIMENSIONS  : FWD AFT

       NO1 28M X 30 NAR. TO 12.5M FRW

       NO2 30M X 30

       NO3 30M X 30

       NO4 30M X 30

       NO5 30M X 30 NAR. TO 14M AFT

HEIGHT OF HOLD   : NO1 16400/18800 NO2,3,4,5 15400/17600

HOLDS VENTILATION : NATURAL


SPEED/CONSUMPTION: BALLAST ABT 14KN/LADEN ABT 13.5KN ON ABT 33 MTS IFO

       380CST RMG 35

ECO SPEED/CONSUMP: BALLAST ABT 12KN ON ABT 23 MTS IFO 380CST RMG 35

(WOG)       LADEN ABT 11.5KN ON ABT 24 MTS IFO 380CST RMG 35

: ABT 0.3 MTS MDO AT SEA/PORT

: ABT 3.5 MTS IFO AT PORT

: ABT 5.5 MTS IFO WINCHES WORKING


BUNKER SPECS AS PER ISO 8217-2010

SPEED/CONSUMPTION IS IN GOOD WEATHER AND UNDERSTOOD

TO MEAN GOOD WEATHER DAYS WITH WEATHER CONDITIONS NOT

EXCEEDING: BEAUFORT SCALE 4 / DOUGLAS SEA STATE 3 /

1.25 SEA WAVE HEIGHT / NO ADVERSE CURRENT OR OTHER

IMPEDIMENTS, EXCLUDING SAILING IN RESTRICTED AREAS,

AND/OR IN/OUT PORTS.


GT/NT         : 31.261 / 18.291

DEBALLASTING RATE : ABT 500 MTS PER HOUR

TANKTOP        : THE UNIFORM TANK TOP STRENGTH FOR NO1+3+5 : 24T/M2

           NO2+4 : 18T/M2

CLASS         : NKK

PNI          : THE LONDON STEAMSHIP

H+M VALUE       : USD 33.0 MIL

OWNERS        : LARK SHIPPING S.A.


ALL DETS ABT


++


-DELETE "WOG" IF ANY FROM VESSEL'S DESCRIPTION -PLS SEND GA & CAPA PLAN/FULL
TC DESCRIPTION/BTB CP/VALID - wog to remain for economical speed/cons
figures also pls see attahced plans + cp, full tc descr as above


-CERTS(CLASS/SMC/DOC/ISSC/REGISTRY/ITC/PNI)- rvting

-PLS ADVISE FULL ITINERARY WITH AGENT FULL STYLE OF DELY PORT - eta CJK o/a
14 jan agw wp uce etb o/a 15 jan agw wp uce etd o/a 17-18 jan agw wp uce

agents: Zhangjiagang Leadway Int'l Ocean Shipping Agency Ltd.


-LAST 5 CARGOES & 10 PORTS/ LAST DRY DOCK/ FULL CP CHAIN

steels     vanino-pohang   kohsichang

coal     muara pantai -  paradip

coal     paradip-     tuticorin

coal     samarinda    -  navlakhi

sulphur    jubail   -   fangcheng/zhangjiagang  (last cargo)


howns: lark shipping sa

last special survey: jan '14


++


FOR


- A/C : DAEBO INTERNATIONAL SHIPPING CO., LTD.

     DONGWON BLDG #7, DANGJU-DONG, JONGNO-GU, SEOUL, KOREA


- OWNERS : lark shipping sa

 Address: Trust company Complex, Ajeltake road,

     Ajeltake island MH 96960 P.O. Box 1405

     Majuro Marshall Islands


- DELY : DLOSP CJK, CHINA ATDNSHINC


- LAYCAN : 0001 HRS 17TH/ 1200 HRS 21ST JAN 2015 [LT]

- for 1 time charter trip with harmless/lawful steels and/or general cargo
via south korea and via panama canal to USG via sp(s),sb(s),sa(s) aaaa awiwl
with duration about 65 days w.O.G.

Deck cargo is not allowed.

Owise always in strict accordance to vessel's certificates, plans

- REDELY : DLOSP OR PASSING 1 sp houston/TAMPA RANGE PICO ATDNSHINC

- HIRE : USD 5,000 PDPR INCL. OVERTIME FOR FIRST 65 DAYS AND USD 9,500
THEREAFTER

HIRE PAYABLE EVERY 15 DAYS IN ADVANCE

- PAYMENT :

FIRST HIRE + VALUE OF BOD TO BE PAID W/I 3 BANKING DAYS AFT VSLS DELY.

CHARTERERS ARE ENTITLED TO DEDUCT ESTIMATED BOR FM last SUFFICIENT HIRE
PAYMENTS.

- ILOHC : Usd 4,800 lmpsm excl disposal/remval of dunnage/lashing
materials/debris

- C/V/E : USD 1,500 PMPR

- BUNKER :

Vsl to be delivered with abt 450/550 mts ifo and abt 50/70 mts mdo.

Vsl to be redelivered with abt the same quantities as actually on delivery.

Charterers to pay value of bunkers on delivery together with first hire
within 3 banking days after delivery. Charterers have the right to deduct
from last sufficient hire payment(s) estimated value on bunkers on
redelivery.

Prices bends for any adjustments:

Usd 310 pmt for ifo / usd 650 for mdo bends.

IN CASE ULTRA LS OIL(SULPHUR NOT EXCEEDING 0.1 PCT) REMAINS ON BOARD ON
REDELY, THE SAME IS TO BE SETTLED BY CHARTERERS' PURCHASED PRICE.

CHARTERERS HAVE AN OPTION TO SUPPLY BUNKER ISO 8217-2005 SPEC.


- VESSEL'S ALL HOLDS ON DELY OR ON ARRIVAL 1ST LOAD PORT TO BE CLEAN,

SWEPT AND WASHED DOWN BY FRESH WATER AND DRIED UP AND FREE OF SALT

AND IN EVERY RESPECT READY TO RECEIVE steels and generals

AND TO PASS INDEPENDENT SURVEYORS' INSPECTION. IF FAILS TO PASS SUCH

INSPECTION VSL TO BE PUT OFF HIRE FROM THE TIME OF REJECTION

UNTIL REINSPECTION PASSED AND any direct/proven related expenses to be

TO BE FOR OWNERS ACCT.


- OWNES ALLOW CHTRS TO DISCH CGO W/OUT REPRESENTATION OF

ORIGINAL BS/L N CHTRS PROVIDE LETTER OF INDEMNITY AS PER OWNS'

PNI CLUB WORDINGS SIGNED BY CHTRS ONLY.

loi to have copy of front and back of bills of ladings.


- OWNERS CONFIRM VESSEL CAN TRADE US WITHOUT ANY PROBLEM.


- OWNERS GUARANTEE COFR IS FULLY VALID UNDER THIS CHARTER PERIOD


- OWNERS GUARANTEE ALL SHIP'S CRANES AND EQUIPMENTS ARE STRICTLY IN
COMPLIANCE WITH LONGSHOREMAN'S REGULATION.

OTHERWISE, VESSEL TO BE PUT OFF-HIRE AND ALL CONSEQUENTIAL EXPENSES
ARISING THEREFROM TO BE FOR OWNERS' ACCT.


- OWNERS GUARANTEE VESSEL HAS NEVER CALLED IRANIAN/CUBAN PORTS


- OWS GTEE THAT VSL'S H.COVERS ARE TO BE WATERTIGHT ALL

THROUGHOUT THIS CHARTER PERIOD AND IF ANY H.COVER FOUND

DEFECTIVE, SAME TO BE RECTIFIED AT OWRS' TIME AND EXPS TO

INDEPENDENT SURVEYORS' SATISFACTION. CHTRS ALSO HAV THE RIGHT

TO CARRY OUT HOSE TEST ON ALL HATCHES DURING THIS CHARTER.

- All bs/l's to be issued in strict conformity with mate's receipts

 containing all the remarks found during pre loading survey which

 will be held by Owners P+I Club recomended surveyor. Cost os such survey

 be owrs account cause chtr also will appoint their surveyors.

- BIMCO ISM/ISPS CLAUSE TO BE APPLIED

- GA/ARBITRATION IN LONDON AND ENGLISH LAW TO APPLY

- 3.75 PCT ADDCOM TO CHARTERERS + 1.25 KCC

O'WISE AS PER OWRS PROFOMA CP AS ATTACHED (MV TEO / NORDEN, CP DATED 27TH
MAR 2014) WITH LOGICAL AMENDMENT WITH M/T AGREED

AND FOLL ALTERNATIONS :

1. MAIN BODY

-LINE 43 : DELETE "All other fumigations shall be for Charterers' account
after vessel has been on charter for a continuous period of six months or
more."

-LINE 56 : DELETE "20/"

++

2. RIDER

-CLAUSE 36 : REPLACE "1996" WITH "2011"

7

-CLAUSE 37 : DELETE IN FULL AND INSERT AS PER MAINTERM AGREED

-CLAUSE 53 : DELETE IN FULL AND INSERT "Owners are to give Charterers the notice of delivery on a daily basis."

-CLAUSE 56 : INSERT "the vessel's condition and" AFTER "for the purpose of ascertaining"

-CLAUSE 61 : REPLACE "3 days" WITH "3 clear banking days"

-CLAUSE 68 : DELETE "plus the 5% margin"

-CLAUSE 74, (a) : REPLACE "an aggregated" WITH "consecutive"

END.

BRDGS/SE LEE/KCC SEOUL

TEL : 82-2-734-6353(DIR.)

FAX : 82-2-779-6883  MOB : 82-10-3372-3912

HANDY@KOREACHARTERING.CO.KR <mailto:HANDY@KOREACHARTERING.CO.KR>  (DURING WORK DAY)

jessykcc@gmail.com <mailto:jessykcc@gmail.com>  (during holiday).

SKYPE : tamseoheup_1

------=_NextPart_001_5A37_01D02EA9.C88D2B70
Content-Type: text/html;
charset="us-ascii"
Content-Transfer-Encoding: quoted-printable

<html xmlns:v=3D"urn:schemas-microsoft-com:vml" =
xmlns:o=3D"urn:schemas-microsoft-com:office:office" =
xmlns:w=3D"urn:schemas-microsoft-com:office:word" =
xmlns:m=3D"http://schemas.microsoft.com/office/2004/12/omml" =
xmlns=3D"http://www.w3.org/TR/REC-html40"><head><META =
HTTP-EQUIV=3D"Content-Type" CONTENT=3D"text/html; =
charset=3Dus-ascii"><meta name=3DGenerator content=3D"Microsoft Word 15 =

(filtered medium)"><style><!--
/* Font Definitions */
@font-face
{font-family:\AD74\B9BC;
panose-1:2 11 6 0 0 1 1 1 1 1;}
@font-face
{font-family:"Cambria Math";
panose-1:2 4 5 3 5 4 6 3 2 4;}
@font-face
{font-family:"\B9D1\C740 \ACE0\B515";
panose-1:2 11 5 3 2 0 0 2 0 4;}
@font-face
{font-family:"\@\AD74\B9BC";
panose-1:2 11 6 0 0 1 1 1 1 1;}
@font-face
{font-family:"\@\B9D1\C740 \ACE0\B515";
panose-1:2 11 5 3 2 0 0 2 0 4;}
@font-face
{font-family:Fixedsys;}
@font-face
{font-family:"?? ??";}
/* Style Definitions */
p.MsoNormal, li.MsoNormal, div.MsoNormal
{margin:0cm;
margin-bottom:.0001pt;
text-align:justify;
text-justify:inter-ideograph;
text-autospace:none;
word-break:break-hangul;
font-size:10.0pt;
font-family:"?? ??";}
a:link, span.MsoHyperlink
{mso-style-priority:99;
color:#0563C1;
text-decoration:underline;}
a:visited, span.MsoHyperlinkFollowed
{mso-style-priority:99;
color:#954F72;
text-decoration:underline;}
p.MsoPlainText, li.MsoPlainText, div.MsoPlainText
{mso-style-priority:99;
mso-style-link:"\AE00\C790\B9CC Char";
margin:0cm;
margin-bottom:.0001pt;
text-autospace:none;
word-break:break-hangul;
font-size:10.0pt;
font-family:"Courier New";}
span.Char
{mso-style-name:"\AE00\C790\B9CC Char";
mso-style-priority:99;
mso-style-link:\AE00\C790\B9CC;
font-family:"Courier New";}
span.EmailStyle19
{mso-style-type:personal;
font-family:"?? ??";
color:windowtext;}
span.EmailStyle20
{mso-style-type:personal;

font-family:"?? ??";
color:#1F497D;}
span.EmailStyle21
{mso-style-type:personal-reply;
font-family:"\B9D1\C740 \ACE0\B515",serif;
color:#1F497D;}
..MsoChpDefault
{mso-style-type:export-only;}
@page WordSection1
{size:612.0pt 792.0pt;
margin:3.0cm 72.0pt 72.0pt 72.0pt;}
div.WordSection1
{page:WordSection1;}
--></style><!--[if gte mso 9]><xml>
<o:shapedefaults v:ext=3D"edit" spidmax=3D"1026" />
</xml><![endif]--><!--[if gte mso 9]><xml>
<o:shapelayout v:ext=3D"edit">
<o:idmap v:ext=3D"edit" data=3D"1" />
</o:shapelayout></xml><![endif]--></head><body lang=3DKO =
link=3D"#0563C1" vlink=3D"#954F72"><div class=3DWordSection1><p =
class=3DMsoNormal align=3Dleft =
style=3D'margin-bottom:12.0pt;text-align:left;text-autospace:ideograph-ot=
her;word-break:keep-all'><span lang=3DEN-US =
style=3D'font-family:Fixedsys'>FM : KCC(KOREA CHARTERING CO.,LTD.)SEOUL =
<br>    ROOM NO. 1406, YUWON GOLDENTOWER, =
<br>    53, CHUNGJEONGRO , SEODAEMUN-GU, =
<br>    SEOUL, 120-722, KOREA.<o:p></o:p></span></p><p =
class=3DMsoNormal align=3Dleft =
style=3D'text-align:left;text-autospace:ideograph-other;word-break:keep-a=
ll'><span lang=3DEN-US =
style=3D'font-family:Fixedsys;color:#1F497D'><o:p> </o:p></span></p>=
<p class=3DMsoNormal align=3Dleft =
style=3D'text-align:left;text-autospace:ideograph-other;word-break:keep-a=
ll'><span lang=3DEN-US style=3D'font-family:"&#47569; &#51008; =
&#44256;&#46357;",serif;color:#1F497D'>FOTIS / =
SE<o:p></o:p></span></p><p class=3DMsoNormal align=3Dleft =
style=3D'text-align:left;text-autospace:ideograph-other;word-break:keep-a=
ll'><span lang=3DEN-US style=3D'font-family:Fixedsys'><br>  =
<br><br>GOOD DAY !<o:p></o:p></span></p><p class=3DMsoNormal =
align=3Dleft =
style=3D'text-align:left;text-autospace:ideograph-other;word-break:keep-a=
ll'><span lang=3DEN-US =
style=3D'font-family:Fixedsys'><o:p> </o:p></span></p><p =
class=3DMsoNormal align=3Dleft =
style=3D'text-align:left;text-autospace:ideograph-other;word-break:keep-a=
ll'><span lang=3DEN-US =
style=3D'font-family:Fixedsys'><o:p> </o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'><o:p> </o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US style=3D'color:black'>PLSD TO =
CONFIRM CLEAN RECAP ASF : (CP DATED 12<sup>TH</sup> JAN 201</span><span =
lang=3DEN-US style=3D'color:#1F497D'>5</span><span lang=3DEN-US =
style=3D'color:black'>) <o:p></o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'><o:p> </o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'><o:p> </o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>NAME       &nbsp=

;     : MAGNUM FORTUNE<o:p></o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>DWT/DRAFT      =
: SUMMER  : 53.631 MT AT 12.490M<o:p></o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>FLAG       &nbsp=
;     : LIBERIA<o:p></o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>BUILT       &nbs=
p;    : 2009<o:p></o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>TYPE       &nbsp=
;     : SELF DISCH - DOUBLE SKINNED/BULK =
CARRIER<o:p></o:p></span></p><p class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>GR/BL       &nbs=
p;    : =
2.321.884,61CBFT/2.271.895,16CBFT<o:p></o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>HO/HA       &nbs=
p;    : 5 HO/HA<o:p></o:p></span></p><p =
class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>TPC       &nbsp=
;     : 56,4 MT/CM (FOR SCANTLING =
DRAFT)<o:p></o:p></span></p><p class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>CO2 FITTED       : =
YES<o:p></o:p></span></p><p class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>GEAR       &nbsp=
;     : 4X30 TS CR AT HOOK =
POSITION<o:p></o:p></span></p><p class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>GRABS       &nbs=
p;    : 4X12.5 CBM-RADIO REMOTE CONTROL WITH CAPACITY =
ADJUST<o:p></o:p></span></p><p class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>LOA/BREADTH      : =
189.99M/32.26M<o:p></o:p></span></p><p class=3DMsoPlainText><span =
lang=3DEN-US style=3D'color:black'>DEPTH MOULDED    : =
17.20M<o:p></o:p></span></p><p class=3DMsoPlainText><span lang=3DEN-US =
style=3D'color:black'>L.B.P.


>----- Original Message End -----

# Time Charter

### GOVERNMENT FORM

*Approved by the New York Produce Exchanges*

November 6th, 1913 – Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

1 **This Charter Party**, made and concluded in *Naples*,......................on the *27th* day of *March*...... ...............................19 *2014*
2 Between *Messrs. "Ricchi Navigation Ltd"* as

.................................................................................................................................................................................

3 Owners of the good........*Marshall Islands*......................................................... Steamship/Motorship *" Teo"* (See *Clause 43*)..............................................................of............................

4 of.............................. tons gross register, and ........................ tons net register, having engines of........................indicated horse power

5 and with hull, machinery and equipment in a thoroughly efficient state, and classed .........................................................

6 at .................... of about .................... cubic feet bale capacity, and about ...........................tons of 2240 lbs.

7 deadweight capacity (cargo and bunkers, including fresh water and stores not exceeding one and one half percent of ship's deadweight capacity

8 allowing a minimum of fifty tons) on a draft of ............ feet ........ inches on ............ Summer freeboard, inclusive of permanent bunkers,

9 which are of the capacity of about .......................... tons of fuel, and capable of steaming, fully laden, under good weather

10 conditions about ................... knots on a consumption of about ................... tons of best Welsh coal best grade of fuel oil best grade Diesel oil

11 new

.................................................................................................................................................................................

12 ........................................... and Messrs. *"DS Norden A/S"* Charterers of the City of *Copenhagen*

13 **Witnesseth,** That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery for

14 *period about 11/about 13 months (about means -/+ 15 days), Charterers option further period about 11/about 13 months, always via safe anchorages, safe ports, safe berths, always afloat, always accessible, with bulk harmless/lawful cargoes in compliance with the trading and cargo exclusions terms as agreed and always to be loaded in accordance with latest IMO/IMSBC code recommendations and regulations.*
*Charterers option(s) to extend the charter period to be declared at any time during the firm period however latest 30 days prior the 12th month of trading. Charterers to give not less than 30 days redelivery notice and otherwise as per Charter Party. Optional period, if declared, to commence and hire to be adjusted from the 1st day of the 13th moth (upon completion of the 12th month).*

.................................................................................................................................................................................

15 within below mentioned trading limits.
16 Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for
17 the fulfilment of this Charter Party.
18 Vessel to be placed at the disposal of the Charterers, *at delivery dropping last outward sea pilot Cailan, any time day or night Sundays and Holidays included* ...................................................................................................

19 .........................................................................................................................................................................

20 in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No 6), as

21 the Charterers may direct. If such dock, wharf or place not available time to count as provided for in clause No.5 Vessel on her *arrival first and subsequent load port(s) delivery to be (See also Clause 47)*

22 ready to receive any *permissible cargo under this Charter Party to Independent Surveyor's satisfaction. Should the vessel fail to pass such survey then the vessel to be off-hire, from time of failure till vessel is accepted. On delivery and throughout this Charter, vessel to* be with clean-swept *wash down with fresh water and dried* holds and tight, staunch, strong and in every way fitted for the service, having water ballast, *cranes* winches and

23 donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the *cranes* winches at one and the same

24 time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchant-

25 dise, including petroleum or its products, in proper containers, excluding

*See Clause 37* ...................................................................................................................................................

26 (vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,

27 all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and / or ports, in British North

28 America, and / or United States of America, and / or West Indies, and / or Central America, and / or Caribbean Sea, and / or Gulf of Mexico, and / or

29 Mexico, and / or South America ..............................................................................................................*Trading*

*Exclusions: (See also Clause 65)* ......................................................................................and / or Europe

30 and / or Africa, and / or Asia, and / or Australia, and / or Tasmania, and / or New Zeland, but excluding Magdalena River, River St. Lawrence between

31 October 31st and May 15th, Hudson Bay and all unsafe ports, also excluding when out of season, White Sea, Black Sea and the Baltic,

32 *With prior consent from the Owners, Charterers have the option to breach International Navigational Limits (but always excluding war and/or war like zone(s): (see also Clause 68) against charterers paying additional premium on hull and machinery insurance as per vouchers from Owners Hull underwriters together with vessel's next hire payment.*

.................................................................................................................................................................................

33 ...........................................................................................................................................................................

34 ...........................................................................................................................................................................

35 as the Charterers or their Agents shall direct, on the following conditions:

1



36     1. That the Owners shall provide and pay for all provisions, wages, and consular shipping and discharging fees of the  Crew, *but costs for qualified winchmen always for Charterers account and to be provided from shore shall pay for the*

37 insurance of the vessel, also for all the cabin, deck, *mooring ropes*, engine-room and other necessary stores, including boiler water and maintain  her class and keep

38 the vessel in a thoroughly efficient state in hull *cargo spaces*, machinery and equipment *with all certificates necessary to comply with current requirements at ports of call* for and during the service.

39     2. That *whilst on hire* the Charterers shall  provide and pay for  all fuel except  as otherwise agreed, Port Charges, *Compulsory and Customary* Pilotages, Canal/River Dues and Tolls, Towages, Agencies, Commissions, *compulsory Garbage Removal, compulsory Watchmen,*

40 Consular Charges (except those pertaining to the Crew), and all other usual  expenses those  before  stated, but when the vessel puts into

41 a  port  for causes  for  which  vessel *and/or Owners* is/are  responsible, then all such charges incurred shall be paid by the Owners.  Fumigations ordered because of

42 illness  of  the crew  to be for Owners account.  Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43 charter to be for Charterers  account.  All  other fumigations to be for Charterers account  after vessel has been on charter for a continuous period

44 of  six  months or more. *In case port authorities order crew to evacuate vessel, all expenses such as hotel/accommodation etc to be for Charterers account (see also Clause 45)*

45     Charterers  are  to provide necessary dunnage and shifting  boards, also any extra  fittings requisite for a special  trade or unusual cargo, but

46 Owners  to  allow them  the  use of any  dunnage and shifting  boards  *any other fittings* already aboard  vessel. ~~Charterers to have the privilege of using shifting boards~~

47 ~~for dunnage, they making good any damage thereto.~~

48     ~~3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel  remaining on~~

49 ~~board the vessel  at the current price in the respective ports, the vessel to be delivered with not less than~~ ............................tons and not more than

50 .........................................tons and to redelivered with not less than ...................................... tons and not more than ........................... tons.
*(See Clause 35)*

51     4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of  *as per Clause 71*...........................................

52 ....................................................................United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and

53 stores, on .................... summer freeboard, per Calendar Month, commencing on and from  the  day of  her delivery, as aforesaid, and at

54 and after the  same  rate  for  any part of a *day*  month;  hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary

55 wear and tear excepted, to the Owners (unless lost) at ......*on dropping last outward sea pilot one safe port any time day and night, Sundays and holidays included, port in Charterers option, Muscat/Japan range including Indonesia, Malaysia, Philippines, Taiwan, any time day and night, Sundays and holidays included  Charterers option Skaw/Gibraltar range, including Baltic/UK/Eire/Full Mediterranean/Black Sea if Adriatic then redelivery passing Otranto Charterers option Boston/Bahia Blanca including USG/Caribbean/north coast South America Charterers option Vancouver Valparaiso range any time day and night, Sundays and holidays included* ...................................

56 .....................................................................unless  otherwise  mutually  agreed. Charterers  are  to  give Owners not less than *20/15/10/7 days approximate and 5/3/2/1 definite*

57 notice of vessel expected date of re-delivery and port, and probable port *(See also Clause 53)*

58     5. Payment  of said  hire  to  be  made  in New York  *to the bank account designated by Owners net of any deductions refers to Charterers bank costs for the remittance/transmitting cost from remitting bank*, in cash in United States Currency,  semi-monthly in  advance and for the last half month or

59 part of same the  approximate amount of  hire, and  should same not cover the actual  time, hire is to be paid for the balance day by day, as it becomes

60 due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61 hire, or  bank  guarantee, or on any breach of this Charter Party, the  Owners shall be  at  liberty to withdraw the  vessel from the service of the Char-

62 terers  without  prejudice to any claim  they  (the Owners) may  otherwise have on  the Charterers (see *Clause 61*)  Time to count 7 a.m. on the working day

63 following that on which  written  notice of  readiness  has been given to  Charterers or their  Agents  before 4 p.m., but if required by Charterers, they

64 to have the privilege of using vessel at once, such time used to count as hire.

65     Cash  for vessel's ordinary  disbursement  at  any port  may be advanced  as required by the Captain, by the  Charterers  or their  Agents, subject

66 to 2 1/2 %  commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67 of such advances.

68     6. That the  cargo or  cargoes  be  laden  and / or  discharged  in any *safe* dock or at any *safe*  wharf at *safe* place or *safe anchorage in port* that Charterers or their Agents may

69 direct, provided the vessel can safely  lie  always afloat at  any  time of tide, except and other ports where it is customary for similar size vessels to safely

70 lie  aground. *(See also Clause 51)*

71     7. That  the  whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also

72 accommodations  for  Supercargo, if  carried, shall be at  Charterers' disposal, reserving  only  proper and sufficient space for Ship's officers, crew

73 tackle,  apparel,  furniture, provisions, stores and fuel.  Charterers  to have the privilege  of  passengers  as  far  as  accommodations allow, Charterers

74 paying Owners.................................... per day per passenger for accommodation and meals. However, it is agreed that in case of extra expenses are

75 incurred in the consequences of the carriage of passengers, Charterers are to bear such risk and expense.  *No passengers allowed.*

76     8. That the  Captain shall  prosecute  his  voyages  with the  utmost despatch, and shall render all  customary assistance with ship's crew and

77 boats.  The Captain  (although appointed  by the Owners), shall  be  under  the orders  and directions  of the Charterers as regards employment and

78 agency;  and  Charterers  are to load, stow, *secure, discharge, lash, unlash, dunnage, undunnage, unsecure and tally* and trim  the cargo at their expense under the supervision of the Captain, who is to sign *or when required by Charterers or their agents to sign on his behalf* Bills of Lading for

79 cargo as presented, in *strict* conformity with Mate's or Tally Clerk's receipts. *(see also Clause 33).*

80     9. That if  the Charterers shall  have reason to be  dissatisfied with the conduct of the Captain, Officers, or Engineers, the  Owners shall on

81 receiving particulars of the complaint, investigate the same and, if  necessary, make a change in the appointments.

82     10. That the Charterers shall have permission to appoint a Supercargo *at Charterers risk and expense who is to sign Indemnity Letter as per Owners P&I Club wording*, who shall accompany the  vessel and *see* that voyages are prosecuted

83 with the  utmost  despatch. He is to be  furnished with free  accommodation, and same  fare as provided  for Captain's table, Charterers paying at the

2

84  rate of $ *20*+.00- per day. Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85  Clerks, Stevedore's Foreman, etc. Charterers ~~paying at the current rate per meal, for all such~~ *to compensate Owners lumpsum USD.* *per*
*month or pro rata in respect of Charterers* victualing *communication and representation.*

86  11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87  Captain shall keep a full and correct Log of the voyages or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88  terers, their Agents or Supercargo, when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-

89  sumption of fuel *as well as revolutions of main engine and velocity of and direction of wind and sea, all in English language.*

90  12. That the Captain shall use diligence in caring for *the cargo and for* the ventilation of the cargo. *Vessel has natural ventilation.*

91  13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~ ..............................................

92  ..........................................................................................................................................................................................

93  ~~on giving written notice thereof to the Owners or their Agents .............. days previous to the expiration of the first-named term, or any declared option.~~

94  14. That if required by Charterers, time not to commence before

*10th April 0001 hours* ................................................................................ and should vessel

95  not have given written notice of readiness on or before *20th April 2400 hours* .......................................................... but not later
than 4 p.m. Charterers or

96  their Agents to have the option of cancelling this Charter at any time not later than the ~~day~~ *time* of vessel's readiness. *(See also Clause 55). Laycan
to be narrowed to 5 days spread latest 5th April 2014.*

97  15. That in the event of the loss of time from deficiency *and/or default and//or strike of* crew and/or men *deficiency* of stores, fire,
breakdown or damages to hull, machinery or equipment,

98  grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

99  preventing the full working of the vessel *unless due to Charterers and/or their agents and/or stevedores fault and/or negligence,* the
payment of hire shall cease for the time thereby lost *and all extra expenses directly incurred may be deducted from the hire* and if upon the
voyage the speed be reduced by

100  defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence

101  thereof, and all extra expenses shall be deducted from the hire.

102  16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103  returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104  Rivers, Machinery, Boiler and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

105  The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106  purpose of saving life and property.

107  17. ~~That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons in~~

108  ~~one to be appointed by each of the parties hereto, and the third by the two so chosen, their decision or that of any two of them, shall be final, and for~~

109  ~~the purpose of enforcing any award, this agreement may be a rule of the Court. The Arbitrators shall be commercial men~~ *BIMCO*
*Arbitration Clause to apply with English Law and Arbitration in London, General Average and Small Claims Procedure up to $80,000*
*(See also Clause 30).*

110  18. That the Owners shall have a lien upon all cargoes, and all sub-freights *and sub-hires due to Time Charterers under any Sub-*
*Charter Party (See also Clause 58)* for any amounts due under this Charter, including General Aver-

111  age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112  deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrances incurred by them or their agents, which

113  might have priority over the title and interest of the owners in the vessel.

114  19. That all derelict and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115  Crew's proportion. General Average shall be adjusted, stated and settled *in London,* according to Rules 1 to 15, inclusive, 17 to 22, inclusive,
and Rule F of

116  York-Antwerp Rules *1974 as amended 1994 or any amendments thereto at London* ~~such port or place in the United States as may be~~
~~selected by the carrier,~~ and as to matters not provided for by these

117  Rules, according to the laws and usages at the port of *London* ~~New York. In such adjustment disbursement in foreign currencies shall be~~
~~exchanged into~~

118  ~~United States money at the rate prevailing on the dates made and allowance for damage to cargo claimed in foreign currency shall be covered at~~

119  ~~the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~

120  ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier~~

121  ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~

122  ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~

123  ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~

124  ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~

125  ~~United States money.~~ *Charter hire not to contribute to General Average.*

126  ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~

127  ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~

128  ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~

129  ~~losses, or expenses of a general average nature that may be incurred and shall pay salvage and special charge incurred in respect of the~~

130  ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~

131  ~~ships belonged to strangers.~~

132  Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133  20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the

134  cost of replacing same, to be allowed by Owners.

135  21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~

136  ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~

137  ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138  ..........................................................................................................................................................................................

139  ..........................................................................................................................................................................................

140  22. Owners shall maintain the gear of the ship as fitted, providing gear (for all *cranes* ~~derricks~~) capable of handling lifts up to *their
maximum capacity in accordance with the description clause* up to three tons, ~~also~~

141  ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~

3

142 ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account.~~ Owners also to provide on the vessel *power and electric light on deck and in cargo holds as on board sufficient lanterns and oil* for

143 night work *in all holds simultaneously,* ~~and vessel to give use of electric light which so fitted but any additional lights over those on board to be at Charterers' expense.~~ The

144 Charterers to have the use of any gear on board the vessel. *Charterers shall employ shore crane drivers at their risk and expenses.*

145   23. Vessel to work night and day if required by Charterers, and all *cranes* ~~winches~~ to be at Charterers' disposal during loading and discharging;

146 ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,~~

147 ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~

148 ~~port, or labor unions, prevent crew from driving winches,~~ shore *Cranemen* ~~Winchmen~~ to be paid by Charterers. In the event of a disabled ~~winch or~~

~~winches, crane or cranes or grabs unless mishandling or damage caused by Stevedores,~~ or

149 insufficient power to operate *crane/s* ~~winches,~~ Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any *actual* loss of time *pro rata to the number of cranes out of order and any direct related extra expenses, limited to standby of 1st shift expenses, if any,* occasioned

150 thereby.

151   24. It is also mutually agreed that this Charter is subject to all terms and provisions of and all the exemptions from liability contained

152 in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels;

153 etc.," in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both

154 of which are to be included in all bills of lading issued hereunder: *attached protective Clauses (See also Clause 60)*

155                                             U.S.A. Clause Paramount

156   ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~

157 ~~16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of~~

158 ~~any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading~~

159 ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

160                                             Both to Blame Collision Clause

161 ~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the~~

162 ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried~~

163 ~~hereunder will indemnify the Carrier against all loss or liability to the other or non carrying ship or her owners in so far as such loss~~

164 ~~or liability represent loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non~~

165 ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non carrying ship or her~~

166 ~~owners as part of their claim against the carrying ship or carrier.~~

167   25. The vessel shall not be required to enter any ice bound port, or any port where lights or light ships have been or are about to be with

168 drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

169 port to get out after having completed loading or discharging. *Vessel never to force ice nor push ice nor to follow ice breaker. (See also Clause 76).*

170   26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the

171 navigation of the vessel, insurance, crew, and all other matters, same as when trading for their own account.

172   27. A commission of ~~2 1/2~~ 1.25 per cent is payable by the Vessel and Owners to ........

173 ................................................................................................................................................................

174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175   28. An address commission of ~~2 1/2~~ 3.75 per cent is payable to *Charterers* on the hire earned and paid under this Charter.

*Clauses 29 through 100 are fully incorporated in this Charter Party.*

            **THE OWNERS:**                       **THE CHARTERERS:**

_____            _____

This Charter Party is a computer generated copy of the NYPE (revised 3rd October, 1946) form printed under license from the Association of Ship Brokers & Agents (U.S.A.), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.



Velian Shipbrokers s.r.l.

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

**Clause 29 - Additional Fittings**
Should any welding or fitting be necessary/requisite on vessel's hold(s)/hatch(es), except on fuel tank tops and hoppers, for special trade or unusual cargo, then such works always to be carried out at Charterer's time, account and risk subject to Owner's and vessel's class society surveyor's prior approval.

Charterers shall be fully responsible for any and all damages, time, expenses and costs including but not limited to all burnt area of paints which to be reconditioned to original state upon completion of voyage in question. Upon Owner's requirement, Charterer's shall remove all above fittings prior to redelivery of subject voyage at their cost and time.

**Clause 30 – Arbitration**
BIMCO Arbitration Clause (Dispute Resolution Clause 2013) to apply with English Law and Arbitration in London.

In cases where neither the claim nor any counterclaim exceeds the sum of USD 100,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

**Clause 31 – Arrest**
Should the vessel be arrested during the currency of this Charter at the suit of any person having or purporting to have a claim against or any interest in the vessel except that the arrest is caused by cargo claims or by any other cause to which Owners/Master are not responsible or claims incurred due to irregularity of bills of Lading issued under Charterers' Letter of Indemnity or due to Charterers' and or their Agents' fault, hire under this Charter Party shall not be payable in respect of any period whilst the vessel remains under arrest if such arrest affects loading/discharging operations or otherwise delays the vessel and remains unemployed as a result of such arrest, and the Owners shall reimburse to the Charterers any direct proved expenditure which they may incur directly under this Charter Party in respect of any period during which by virtue of the operation of the Clause no hire is payable.

The clause shall be inoperative should the arrest caused through any omission or liability of the Charterers/Sub-Charterers/Shippers/Receivers or due to any person traveling onboard the vessel on Charterers' request.

**Clause 32 – Asian Gypsy Moth**
Owners warrant that vessel meets all agriculture Canada plant protection division/ National Cargo Bureau/United States Department of Agriculture plant protection and quarantine office regulations and that vessel is free of any Asian Gypsy Moth eggs or larvae or any form of Asian Gypsy Moth life at the time of delivery.

In the event Charterers instruct the vessel to trade to/from the port(s) such as Japanese port(s), South Korean port(s), Chinese port(s) etc which is (are) determined as high risk port(s) for contamination of any form of Asian Gypsy Moth (AGM) by the Government or other authority concerned, such as the United States Department of Agriculture (USDA) and/or Canadian Food Inspection Agency (CFIA) and/or authorities of the Australia and/or New Zealand etc, prior vessel's departure last high risk port, Charterers shall carry out an inspection to obtain the certificate of freedom from any form of AGM life, including larvae and eggs, by recognized

1



EXHIBIT
_C_



**Velian Shipbrokers s.r.l.**

ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014
MV TEO / NORDEN AS

authorities approved by USDA and/or CFIA and/or any authorities designated by the country of destination at Charterers time and expenses. Should the surveyor discover traces of any form of Asian Gypsy Moth (AGM), fumigation to be arranged by and paid for by the Charterers and the vessel to remain on-hire. After vessel has been fumigated and been re-inspected, the surveyor to issue an AGM certificate that vessel is free of any form of Asian Gypsy Moth(AGM) life.

In any case Charterers shall assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and time loss and all other claims of whatsoever nature arising from Charterers' orders to trade vessel at areas where vessel has been contaminated of any form of Asian Gypsy Moth (AGM).

Clause 33 – Bill(s) of Lading
Notwithstanding the provisions of Clause 8, if required, Master to authorize Charterers or their Agents ( in writing each time required ) to sign Bill of Lading for and on behalf of the Master but always in strict accordance with Mate's Receipt(s) without prejudice to this Charter Party.

Charterers have the option either to split the original set of Bill(s) of Lading or to order the vessel to any other port(s) than the one shown in the original set of Bill(s) of Lading within the terms and allowances of this Charter party. In both cases new set of Bill(s) of Lading will be subject to the same terms and conditions to which they were initially issued. New set of Bill(s) of Lading will be substantially in the same form as the original set as to identity of shippers, consignee, notify party etc. In the event that Bill(s) of Lading are split, then Charterers shall ensure that the sum of the cargo quantity on all new Bill(s) of Lading equals the total in the original Bill(s) of Lading. Any remarks on the Mate's Receipts and/or Original set of Bill(s) of Lading will be incorporated into the new sets of Bill(s) of Lading.

In both above cases of switch, Original Bill(s) of Lading should be stamped null and void and collected by Owners prior issuing the new set Bill(s) of Lading. Prior signing and/or releasing new set Bill(s) of Lading Charterers or their agents to provide by fax draft of the new Bill(s) of Lading for Owner's approval. In addition to Charterers to issue a Letter of Indemnity in Owners' P&I Club wording properly issued and signed by Charterers indemnifying Owners for all consequences/claims for such switch.

Under this Charter Party neither liner nor through Bill(s) of Lading to be issued. All Bill(s) of Lading shall be without prejudice to this Charter Party and the Charterers shall indemnify the Owners against all consequences or liabilities which may arise from any inconsistency between this Charter party and any Bill(s) of Lading signed by the Charterers or by their agents or by the master at Charterers request.

*Delivery of Cargo without production of original Bill(s) of Lading*
If original Bill(s) of Lading are not available at discharging port, Owners agree to release the entire cargo to the Charterers' order against presentation by Charterers of a Letter of Indemnity (LOI) in wording as per Owners' standard P&I Club form signed by Charterers only at their letter head paper. Discharge to commence on timely receipt and approval by Owners of a faxed or scanned copy of the LOI together with copy(ies) of relevant Bill(s) of Lading (including copy(ies) of the reverse side of the Bill(s) of Lading) and the original LOI to be mailed to Owners. Any delay due to late submission of Letter of Indemnity or due to switch of Bill(s) of Lading shall be for Charterers account and vessel to remain always on hire.

2



**Velian Shipbrokers s.r.l.**

ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27<sup>th</sup> MARCH 2014
MV TEO / NORDEN AS

**Clause 34 – Bulldozers**
Charterers to have the option to use the forklift trucks/bulldozers with rubber wheels in vessel's holds, provided not exceeding the tank top strength.

**Clause 35 – Bunkers**
Vessel to be delivered with about           mts ifo and about         mts lsfo and about           mts mdo, and about     mts lsmgo. Vessel to be redelivered with about the same quantities /qualities, including sulphur content as actually on delivery. Charterers to pay value of bunkers on delivery together with first hire within 3 banking days after delivery. Charterers have the right to deduct from last sufficient hire payment(s) estimated value on bunkers on redelivery. Prices both ends for any adjustments:
Usd     pmt for ifo/usd      pmt for lsfo / usd      pmt for lsmgo both ends.

Charterers' option to supply 180 CST RMF 25 in South Africa only if 380 CST RMG is not available provided that Charterers shall supply vessel with additional chemicals (additives) at their time and cost in accordance with master's reasonable request.

Owners shall have the option to replenish vessel with bunkers for their account during employment and/or prior to vessel's redelivery provided such bunkering does not interfere to vessel's normal operations.

The Owners guarantee that the vessel is eligible for bunkers in the Unites States of America, its territories and possessions and in all countries to which vessel is allowed to trade under this Charter.

<u>Iranian Origin Bunkers</u>
Owners confirm and warrant that they have not knowingly loaded Iranian or Iranian blended bunkers from any port that remain on the vessel at time of delivery that would be in breach of EU Regulation 267/2012 in particular but not confined to article 11 and annex iv.

Charterers confirm and warrant that they will not knowingly supply to the vessel Iranian or Iranian blended bunkers from any port during the period of this charter party that would be in breach of EU Regulation 267/2012 in particular but not confined to article 11 and annex iv.

**Clause 36 – Cargo Claims/P&I Club**
Owners guarantee that the vessel is entered and shall remain entered in a Protection & Indemnity Association, which is a member of the Group of International P&I Clubs, for the duration of this Charter Party. Entry shall include, but not to be limited to, ordinary cover for cargo claims.

Unless otherwise agreed in this Charter Party, Cargo claims as between the Owners and the Charterers shall be settled in accordance with the Inter-Club New York Produce Exchange Agreement effective from 1996 or any subsequent modification or replacement thereof.
Vessels' P&I Club : TBA
Charterers' P&I Club : TBA

**Clause 37 – Cargo Exclusion**
The vessel shall be employed in carrying lawful merchandise in accordance with the requirements or recommendations of the competent authorities of the country of the vessel's registry and of ports

3



**Velian Shipbrokers s.r.l.**

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27ᵗʰ MARCH 2014**
**MV TEO / NORDEN AS**

of shipment/discharge and of any intermediate countries or ports through whose waters the vessel must pass.

Charterers warrant that all cargoes to be loaded/stowed/carried and discharged in strict conformity with I.M.O. / IMSBC code / SOLAS regulations always as per latest edition. Any extra fittings/equipment/etc. which are required to observe such regulations to be undertaken by Charterers at their time/risk/expense. Charterers will hold Owners harmless against all and any consequences that may arise and will indemnify Owners for all and any damages and or losses Owners may suffer as a result of any failure in this respect.

None of the cargoes, goods, or substances listed in the IMO-IMDG code – 1994 consolidation edition and any subsequent new edition thereof or amendments thereto as well as listed on the BC code Appendix 3 or listed below, are to be loaded during the currency of this Charter and any cargo which is not allowed by vessel's class/certificates.

A - Acids, aggregates, aluminium ashes, aluminium nitrates, aluminium ferrosilicon, aluminium ferrosilicon powder UN 1395, aluminium silicon powder, aluminium smelting buy/products, ammonium nitrates except bulk harmless fertilizers grade, ammonium phosphate except bulk harmless fertilizers grade, ammonia, ammonium chloride, ammunition, andalusite, arms, asbestos goods, ashes, asphalt and or its products, ammonio chlorine, automobiles.

B - Barium nitrates, battery scrap, bitumen, blasting caps and powder, black powder, bleaching powder, briquettes, brown coal and brown coal briquettes, bone meal, borax, bullion.

C - Calcined pyrites, calcium carbide, calcium chloride, calcium floride, calcium hypochlorite, calcium hyperchloride, calcium nitrate, calcium oxide, calcium oxychloride, calcium nitrate UN 1454, carbide, carbon black, castor beans, castor meal, castor pomace, castor flak UN 2969, castor seeds, caustic soda, caustic potash, cement, cement clinker, charcoal briquettes, charcoal ingunny bags, chemical wastes, chipped bone, (chilean nitrate - UN 1486,1498,1499 to be allowed), chilean potassic mixture, chilean shaltpetre, concentrates (see below, Owners to allow concentrates metal sulphide MHB as per vessel's certificates), containers, copra, copra products, cotton and cotton waste, cotton seed expellers, creosoted goods, chrome sand, chrome cake, cocoa.

D - Dichlorphenol, direct reduced iron in any form, iron swarf, iron oxide, direct reduced iron (briquettes, hot-moulded), direct reduced iron (lumps, pellets, cold-moulded briquettes), hot briquetted iron, detonators, detonator caps.

E - Esparto, expellers, explosives, essential oils

F - Ferromanganese, ferrosilicon, ferrous meal, ferrous metal, ferrous metal borings, ferrous metal cuttings, ferrous metal shavings, ferrous metal turnings, ferrophosphorus including briquettes, fibres, fire briquettes, fish meal, fishscrap.

G - Galvanised steel only carried at Charterers' risk, gaseous coal, glass, gluten feed pellets, granite blocks, groundnuts,

H - Hot briquette iron, hemp, hides, HMS, hot and cold moulded briquettes, hypochloride solutions.

I - Iron briquettes, iron ore swarf, iron carbide/oxide spent, iron swarf.

Velian Shipbrokers s.r.l.

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

J – Jute

K - Kaolin clay

L - Lead calcined or sulphide or nitrate, livestock, locomotives, logs, lorries.

M - Magnesia, magnetitem magnesium nitrate, manioc, manioc pellets, marble blocks, meal oily, metal sulphide, milled rice, military equipment, mono ammonium phosphate except bulk harmless fertilizer grade, motor blocks, motor spirit, motor vehicles.

N - Naphtha, nefeline, niger seeds, niger seed expellers, nitrate of soda, npk except bulk harmless fertilizer grade, nuclear and radioactive materials or products or fuels or cargo or wastes, nitroglycerine, nickel ore.

O - Oily pieces, oil palm kernels, old rails, organic peroxides, olivine sand.

P - Palm kernels - Owners confirm vessel able to carry palm kernel expellers which are mechanically extracted and containing not more than 10% oil and not more than 20% of oil and moisture combined, UN1386, Group B under IMSBC Code), paper products, pencil pitch in bulk or in drums, pitch prill, pellets wood pulp, pesticides, petcoke, petroleum derivatives and all petroleum products, pitch, pollard pellets, potassium chloride, potassium/sodium nitrate, potash pyrites, pond coal, pre-reduced iron pellets, peat moss.

Q - Quebracho, quebracho extract, quicklime

R - Railway wagons (underdeck only to be allowed), rape seeds expellers, resin, rice bran, resin scrap, rutile sand.

S - Salt, saltpetre, sands, savings metal borings and cuttings, sawdust, scraps, scrapmetal of any form including motor blocks/turnings/swarf, seedcakes, seasoned logs and timber products, silicon manganese, silicon, silica sand, silver sand,sintered ores, sludge ore, solvents, spent oxides, sponge iron, soda ash, sodium/potassium nitrate, sodium sulphate, sulphur,sponge iron, sulphate, sunflower seed/expellers/pellets/cakes, swarf, syanite ore pellets.

T - Taconite, tankage, tankage fertilizer, tar, tar and all its products, titanium slag, trailers, turnings, turpentine, timber
products and plywood.

V - Vanadium ore, vermiculite, vehicles

W - War material of any kind, waste and old paper, wet hides, woodchips and woodpulp pellets (both with less than 15% moisture provided harmless, non-IMO cargo and vessel's certs permit same)

Y - Yachts, yellow phosporus

Z - Zinc ash, zircon sand, zinc dross and residues and all its products.

California Block Stowage (C.B.S.) is not allowed.

5

Velian Shipbrokers s.r.l.

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

Iron ore fines ex India during Monsoon period always excluded.
Iron ore fines/lumps/pellets and concentrates of one grade and same quality in bulk are allowed but always excluding dri/dri prods/hbi in bulk.

Charterers to provide shipper's certificate of moisture + tml/fmp confirming moisture content w/i tml limit to the master prior to loading. Certificate not to be 5 days older than commencement of loading. Certificate to be in line with the requirements of IMSBC code. In case owners require additional physical verification of intended cargo prior loading onboard; such verifications shall be carried out by owners local pandi club surveyor(s) followed by testing of the said sample(s) at a well recognized laboratory.

Such testing of the said sample requested by owrs local p+i club surveyor to be at charterers time and expense subject to actual presentation of vouchers; the entire procedure being done as per imo bulk code/ imsbc procedure. Charterers to render all assistance to owners appointed surveyor. In the event additional physical verification of intended cargo is required by port directive or by pandi surveyor, all costs and time will be for charterers account.

Fertilizer into Australia to be allowed provided vessels trading history is acceptable to Australian authorities. It is understood that if any issue arises then same will be for Charterers full responsibility.

If steels (including billets and blooms) are loaded, Charterers agree that the Mate's Receipts and the Bills of Lading will be properly and accurately claused by fully containing all the remarks found during the pre-shipment condition survey which will be held by Owners' P&I Club surveyor.
Cost of such survey to be equally shared between Owners and Charterers.

Charterers to have the option of loading concentrates in accordance with IMO/IMSBC code and local regulations, however always excluding concentrates in bags and any other concentrates which are expressly excluded in this Charter party. Before commencement of loading Charterers /shippers are to furnish the master with the requisite/relevant analysis certificates as to the nature and physical description of the cargo/quality/parameters/special terms of carriage/moisture contents of the cargo just before loading. Such cargo declaration must be issued according to the latest IMO / international/local rules at load and discharge. Also, Charterers to reimburse owns for any extra expenses incurred by owns as a result including extra fittings and in case if any special documentation required by local a/o national a/o international authorities, Charterers to be responsible for obtaining same at their time and expenses.

Owners not to be responsible for any contamination and/or damage to cargo which may arise due to mixed cargo loaded in the same hold even if separation has been erected in the hold.

Charterers option to load max 5 (five) of following nasties for the whole duration of the period however same not to be last cargo:

Maximum one shipment of cement and/or cement clinker maximum
One shipment of petcoke maximum two shipment of salt maximum
One shipment of sulphur maximum one shipment of scrap

Charterers shall be allowed to load cement clinker as first cargo followed by salt as per main terms agreed. Clinker to be loaded in accordance with protective clause.

6

**Velian Shipbrokers s.r.l.**

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

Charterers shall have the option to load two consecutive salt cargoes. In such case lime coating will not be removed until completion of the second salt cargo and charterers shall only pay owners for coating/removal of coating as if only one cargo of salt was carried. Then charterers have the option to carry another one dirty cargo which will not be last.

In any case the total number of nasties (i.e. Cement, Cement clinker, Petcoke, Salt, Sulphur, Scrap) not to exceed the total number of three (3) cargoes for the period agreed and subject to Owners' protective clause. None of the above nasty cargoes to be last cargo.

Dirty Cargoes Protective clauses

Petcoke/Sulphur clause
(a-1) Petcoke mentioned herein is only limited to the type of non-hazardous, non- dangerous green delayed type and/or calcined type and not failing under Appendix B of the BC Code.

(a-2) Sulphur mentioned herein is only limited to Sulphur IMO 4.1 UN 1350

(b) Charterers undertake to use as few holds as possible provided vessel's stability trim, stress permitting and commercially allowed and always in Master's discretion.

(c) Before loading, all holds assigned for above dirties to be hold blocked.
Charterers to supply adequate quantity of chemicals/fresh water as per master/owrs request, to apply and remove hold block and wash down the holds at Charterers time and expense but always to Masters' satisfaction.

(d) Cargo to be loaded/stowed/trimmed/discharged strictly in accordance with IMO/IMDG regulations/code and/or any other latest regulations/rules applicable to above cargoes

(e) Charterers are allowed to use ship's crew to perform application of hold block prior arrival at loading port, subject to enough time and weather permit and without any responsibility for Owners, and removal of same against paying bonus USD 8,000 lump sum which amount to be paid to Owners in addition to normal hold cleaning, all above services always provided local regulations permit same.

Salt clause
(a) Deleted.

(b) Charterers undertake to use as few holds as possible provided vessel's stability trim, stress permitting and commercially allowed and always in Master's discretion.

(c) Before loading, all holds assigned for above dirties to be hold blocked or lime washed in Charterers option. Charterers to supply adequate quantity of chemicals/fresh water as per master/owners request, to apply and remove hold block and wash down the holds at Charterers time and expense but always to Masters' satisfaction.

(d) Cargo to be loaded/stowed/trimmed/discharged strictly in accordance with IMO/IMDG regulations/code and/or any other latest regulations/rules applicable to above cargoes



**Velian Shipbrokers s.r.l.**

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

(e) Charterers are allowed to use ship's crew to perform application of hold block or limewash prior arrival at loading port, subject to enough time and weather permit and without any responsibility for Owners, and removal of same against paying bonus USD 7,000 lump sum which amount to be paid to Owners in addition to normal hold cleaning, all above services always provided local regulations permit same.

Cement / cement clinker clause
(a) Charterers endeavour to use as few holds as possible, provided vessel's stability/trim and stress permit

(b) Charterers will indemnify owners of all possible cargo solidification, due to hold sweating (if any) which is impossible to avoid by proper operation of existing natural ventilation system.

(c) Charterers to use only ship's permanent cement holes in hatch covers or in case of clinker only through open hatches

(d) Should any chemicals, additional/special wash down of holds before loading and after discharging be reasonably recommended/proposed/required by Owners/Master, Charterers undertake to arrange the same at their time/expense, however Master and crew to always cooperate with Charterers. In addition Charterers to supply submersible pumps for the water remaining in the holds after washing. Charterers to take necessary steps, if any to properly dispose of this water. Vessel's pipelines/bilges not to be used for contaminated water's disposal

(e) Owners to seal all hatches where bulk cement/cement clinker loaded by ramnek or equivalent tape at Charterers'
time if necessary, but cost of such tape to be reimbursed by Charterers upon completion of loading, Master/crew are instructed to clean hatch ceilings and grooves before closing hatches, properly tighten up hatches, for watertight in order to avoid water leakage through hatch covers.

(f)Charterers' option to use crew for hold washing and cleaning in which case to pay USD 3000 per hold to Owners.

(g) Prior loading and discharging, Chrts to provide sufficient plastic sheets and canvas in order to protect vsl's outer side/deck from the cement /cement dust/ cement clinker. Same only applicable for cement in bulk not cement clinker will be loaded through hatches.

Scrap clause
The Charterers shall instruct the terminal operators or their servants to load the scrap in accordance with IMO code of safe practise for cargo stowage and securing. The first layer to reach up to the tank top and shall be loaded softly so as to provide a proper cushion. The first layer of cargo to be evenly stowed/trimmed to the reasonable satisfaction of the Master before loading balance of cargo.

In the event that Charterers, the terminal operators or their servants do not comply with above provisions then Master to have option to stop loading and any loss of time to be for Charterers' account and vessel to be in full hire during such stoppage.

Charterers shall arrange at their time and expense holds' survey before loading and after discharging to ascertain damages to the holds for which Charterers to be responsible.

8



Velian Shipbrokers s.r.l.

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

Charterers warrant that no ferrous metal borings, shaving, turnings, cutting, iron swarf or steel swarf, no oily, nonradioactive parts, no motor blocks, nor other material which could be categorized as dangerous cargo under the IMDG code, to be loaded on board.
After completion of discharging if any oil found on tank top, Charterers to supply sufficient quantity of chemicals/materials/equipments for removing such oily products and take ashore such dirty contaminants at Charterers' time and expense.

Follow protective clause to apply for pig iron:
a) charterers undertake to use holds as few as possible, provided vessels stability and strengths permitting.
b) charterers undertake that loading of first layer of pig iron not to be released until lowered as close as possible to tank top and not to be dumped/dropped during loading, so as to provide a cushion flooring for the balance of cargo under the master's supervision and his reasonable satisfaction.
c) Deleted
d) in case during en route from loading to discharging port, cargo was found to shift which may affect the seaworthiness or safety of the vessel, owners have the right to call at nearest port for necessary cargo trim, all time /expenses incurred to be for charterers account and vessel to remain on hire for period.

Metal Sulphide allowed with the following protective clause:

Vessel is allowed to load metal sulphide concentrates group A and B under the IMDG class 9, UN 3077 in accordance with the provisions of the IMSBC and IMDG code, provided as follows:

- the term metal sulphide concentrates only applies to concentrations of refined ores and does not include by-products of processes.

- prior start loading the competent authority of the port of loading to provide the master of the vessel with a certificate stating the characteristics and the required conditions for the carriage of the bulk cargo in question. The master will not allow to load the cargo if such a certificate is not provided in which case any time lost/additional expenses will be for charterers account.

- there may be additional requirements that the port of loading/unloading has set for the handling of this cargo, which may include but not limited to:

i. Not handling cargo during precipitation and a requirement to keep all non-working hatches closed.

ii. When precipitation is imminent the putting in place of measures to prevent residues being washed overboard.

iii. The containment of any contaminated water so as to avoid release into the environment.

iv. Not conducting loading/unloading operations in windy conditions so as to prevent dust being carried into the environment.

v. Arrangements during loading/unloading to minimise spillage and the return of any spillage to the hold or stockpile as appropriate.

9



Velian Shipbrokers s.r.l.

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

vi. Charterers to arrange at their time and expense for any Cargo residues to be discharged to a suitable shore based.
Reception facility.

vii. Vessel not to be placed either full or partial off hire for any delay to satisfy any and/or all of above requirements and any additional requirements might requested from any party involved. Any additional expenses shall be for charterers account.

If required tripartite agreement from the competent authorities of port of loading/unloading and flag state and/or classification society of the vessel, charterers to endeavour to obtain such tripartite agreement. Any delay in this respect will be for charterers account and time.

**Clause 38 – Documentation**
The Owners shall provide any documentation relating to the Vessel that may be required to permit the Vessel to trade within the agreed trade limits, including but not limited to certificate of financial responsibility for oil pollution, valid international tonnage certificate, valid certificate of registry and certificates relating to the strength and/or serviceability of the Vessel's gear.

**Clause 39 – Crew Service**
The following services from officers and crew are included in the hire provided local regulations permit same, weather permitting and subject to the safety of the crew.

a) All opening and closing of hatches, when and where required.
b) Raising and lowering of derricks and rigging cranes, if fitted, and/or gangways in preparation for loading and discharging.
c) Preparing vessel's holds, shaping up hatches and cranes, if fitted, as much as possible prior arrival at loading and/or discharging places so as to immediately commence loading and/or discharging operations.

**Clause 40 – Deck Cargo**
Charterers have the liberty to load deck cargo (but always excluding logs and/or timber) subject to the requirements of the stability of the vessel, the seaworthiness of the vessel, the strengths of the vessel and subject to the Master's discretion. Any extra fittings, lashing and stowing materials required for deck or hatch cover cargo to be and to be fitted strictly in accordance with class requirements and to be provided and paid for by the charterers.

Owners are hereby indemnified by charterers for any and all loss and/or damage and/or liability of whatsoever nature howsoever arising which is (a) caused to the vessel or to Owners as a result of charterers' orders to carry cargo on deck and/or (b) would not have arisen had the deck cargo not been loaded.
Bills of lading covering deck cargo shall be claused 'shipped on deck at charterers', shippers' and receivers risk, expense and responsibility without liability on the part of the vessel or her owners for any loss, damage, expense or delay howsoever caused'

Bills of lading for voyages to and from ports in the United States of America to be claused: "carried on deck at shipper's risk as to perils inherent in such carriage but in all other respects subject to the provisions of the United States Carriage of goods by sea act, 1936"

10



### Velian Shipbrokers s.r.l.

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

**Clause 41 – Owners' Matters in Port**
Charterers agents should be available to perform minor services to Owners including but not limited to cash advances to Master by Owners, crew mail, arranging fresh water, crew changes, supplies and minor medical attendance etc. These services to be provided at actual cost and no agency fee is applicable, but Owners to settle with Agents and to be ultimately responsible for settling same directly.
The Charterers may however deduct from the Charter hire any amount disbursed for Owners' account. Charterers shall use their best efforts to collect all the relevant vouchers for Owners' expenses in time and they may deduct from the last hire payment the reasonable estimated expenses incurred by Charterers for Owners' account not exceeding $250 per port. The difference between estimated reserved expenses and actual expenses shall be adjusted and settled when vouchers become available. However final settlement for Owners expenses to be arranged by Charterers as prompt as possible but latest within 60 days after redelivery.

**Clause 42 – Delivery/Redelivery Time**
Delivery and redelivery time to be based on Greenwich Mean Time for hire calculation purposes only but delivery dates/canceling (laycan) to apply in local time.

**Clause 43 – Description of the Vessel**
NAME          : TEO
DWT/DRAFT     : 35,745 AT 10,50SW
FLAG          : MARSHALL ISLANDS
BUILT         : MAY 2011
TYPE          : BULK CARRIER
CLASS         : BV
HO/HA         : 5 HO/HA
TPC           : 49.6 MT/CM (FOR SCANTLING SUMMER DRAFT)
CO2/GRAIN FITTED : YES/YES
GEAR          : 4 X TTS CRANES SWL 30 TS AT HOOK POSITION
4 X 8 CBM GRABS
LOA/BREADTH   : 179.959M/31.00M
DEPTH MOULDED   : 14.60M
L.B.P.        : 172.44M
HOLD CAP      : GRAIN (M3) BALE (M3)
NO1   6,495.9    6,379.7
NO2   10,471.6 10,271.7
NO3   10,233.9 10,018.9
NO4   10,549.4 10,345.6
NO5   9,637.3    9,529.1

TOTAL  47,388.1 46,545.0

HATCHES DIMENSIONS : NO.1 16M X 17.5M
NO.3 19.2M X 21M
NO.2+4+5 20M X 21M
TYPE OF HATCHES    : MACGREGOR FOLDING TYPE ELECTRO-HYDRAULIC DOUBLE SKIN

HOLDS DIMENSIONS (AT MID-HOLD DEPTH):
                BREADTH  FWD AFT      LENGTH

11



**Velian Shipbrokers s.r.l.**

ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014
MV TEO / NORDEN AS

| NO.1 | 11.41 23.75 | 23.2 |
|------|-------------|------|
| NO.2 | 23.75 27.07 | 28.0 |
| NO.3 | 27.07 27.07 | 27.2 |
| NO.4 | 27.07 27.07 | 28.0 |
| NO.5 | 27.07 22.80 | 27.2 |

FLAT TANK TOP DIMENSIONS:
NO.1 L 23.2 M - B/FWD 5.6M  - B/AFT 19.076 M
NO.2 L 28 M  - B/FWD 20.493 M - B/AFT 24.8 M
NO.3 L 27.2 M - B 24.8 M
NO.4 L 28 M  - B 24.8 M
NO.5 L 27.2 M - B/FWD 24.8 M - B/AFT 5.6 M

HEIGHT OF HOLD: NO.1,2,3,4,5: 13.2 M

HOLDS VENTILATION : MECHANICAL IN NO.2+3+4 HOLDS, 8 A/C PER HR NATURAL IN NO.
1+5 HOLDS

SPEED/CONSUMPTION : ABT 14KTS(BALLAST)/ABT 13.50KTS(LADDEN) ON ABT 24 MT IFO
+ ABT 2 MT IFO FOR D.G 380CST RMG 35
: ABT 2.5 MT IFO AT PORT/IDLE
: ABT 5.0 MT IFO WHEN CRANES WORKING
: ABT 0.2 MT MDO AT SEA/PORT
BUNKER SPECS AS PER ISO 8217-2010
SPEED/CONSUMPTION IS IN GOOD WEATHER AND UNDERSTOOD TO MEAN GOOD
WEATHER DAYS WITH WEATHER CONDITIONS NOT EXCEEDING: BEAUFORT SCALE 4 /
DOUGLAS SEA STATE 3 / 1.25 SEA WAVE

HEIGHT / NO ADVERSE CURRENT OR OTHER
IPEDIMENTS, EXCLUDING SAILING IN RESTRICTED
AREAS, AND/OR IN/OUT PORTS.

ECO SPEED/CONS(WOG): ABT 12.50KTS ON ABT 18 MTS IFO(B)/21MTS IFO
(L) + ABT 2 MTS IFO FOR D.G 380 CST RMG 35
GT/NT       : 23,460/12,924
STRENGTH      : TANK TOP 20 MT/M2
PNI CLUB      : THE LONDON STEAMSHIP
H+M VALUE     : USD 28.0 MILL
OWNERS      : RICCHI NAVIGATION LTD
ALL DETS ABT

Owners confirm:
===============
1) Vessel is a single deck self-trimming, bulk carrier engine and bridge aft/steel floored suitable for
grabs discharge and suitable in all respects to carry charterers intended cargo.
2) Charterers to have full use of vessels gear including grabs if vessel fitted with same.
3) Vessel has no cargo battens in holds and no horizontal corrugations, no centre line beam or
bulkhead or container fittings.
4) Vessel is classed highest Lloyds or equivalent and will remain so for the duration of this cp



**Velian Shipbrokers s.r.l.**

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

5) Vessel is suitable to trade charterers intended countries / ISM compliant.
6) Vessel is fully covered/entered with a member of the international group P&I (international group of p and i clubs) : The London Steamship
7) Please advise name and H+M insurance (please advise H+M value) and will remain so throughout this charter: leading is "certain underwriters at Lloyd's" followed by "HCC international insurance co" etc.. Total value is USD 28 mill
8) Vessel is free of Asian gypsy moth larvae/eggs and have a valid non agm certificate if vessel has called any agm high risk port for the last 12 months.
9) Vessel is Rightship approved and will remain same throughout this charter

- Full style of all parties in the tc chain: vessel is with head owners
- Usual trading certificates - doc, smc, issc, class, pandi, tonnage, registry

The owners warrant and undertake that throughout the currency of this charter party:

The vessel shall not be named on the list of special designated nationals and blocked persons (the "sdn list") as published and amended from time to time by the U.S. treasury department's office of foreign assets control ("ofac"); and the vessel's registered owner shall not be named on the sdn list; and the Vessel shall not be owned, chartered, operated or controlled by any person or entity named on the sdn list; and the vessel shall not be flagged or registered by a country that is subject to the U.S. sanctions laws administered by ofac from time to time (the "U.S. sanctions") and acceptance of the vessel by charterers shall not constitute a violation of us sanctions; and the vessel shall not be owned or chartered by a person or entity that is registered, constituted or organised in, or that is a citizen or resident of or located in, a country that is subject to the US sanctions and acceptance or trading of the vessel by charterers would constitute a violation of US Sanctions; and acceptance and trading of the vessel by the Charterers throughout the charter party duration shall not constitute a violation of any sanctions laws of the united Nations, the United Kingdom, the European union, the United States of America, by the charterers as if it were subject to such sanctions laws, all as amended from time to time. Should at any time during this charter party owners be in breach of any of the provisions and/or warranties contained in this clause, then: Owners shall indemnify the charterers against any losses or damages whatsoever resulting, and charterers shall have the right to immediately cancel the charter party.

Charterers have privilege to use normal electro-hydraulic grabs and to place in holds pay loaders or bulldozer with rubber wheels of similar equipment for use in loading/discharging and to remove same upon completion of loading/discharging by means of vessels gears subject to gear lifting capacity and subject to tank top strength and under the supervision of the master and up to his satisfaction. Vessel to supply power to electro-hydraulic grabs if needed as far as a vessel of her type can supply.

**Clause 44 – BIMCO Ship to Ship Transfer Clause for Time Charter Parties**
(a) The Charterers shall have the right to order the Vessel to conduct ship to ship cargo operations, including the use of floating cranes and barges. All such ship to ship transfers shall be at the Charterers' risk, cost, expense and time.
(b) The Charterers shall direct the Vessel to a safe area for the conduct of such ship to ship operations where the Vessel can safely proceed to, lie and depart from, always afloat, but always subject to the Master's approval. The
Charterers shall provide adequate fendering, securing and mooring equipment, and hoses and/or other equipment, as necessary for these operations, to the satisfaction of the Master.

13



**Velian Shipbrokers s.r.l.**

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27<sup>th</sup> MARCH 2014**
**MV TEO / NORDEN AS**

(c) The Charterers shall obtain any and all relevant permissions from proper authorities to perform ship to ship operations and such operations shall be carried out in conformity with best industry practice.

(d) If, at any time, the Master considers that the operations are, or may become, unsafe, he may order them to be suspended or discontinued. In either event the Master shall have the right to order the other vessel away from the Vessel or to remove the Vessel.

(e) If the Owners are required to extend their existing insurance policies to cover ship to ship operations or incur any other additional cost/expense, the Charterers shall reimburse the Owners for any additional premium or cost/expense incurred.

(f) The Charterers shall indemnify the Owners against any and all consequences arising out of the ship to ship operations including but not limited to damage to the Vessel and other costs and expenses incurred as a result of such damage, including any loss of hire; damage to or claims arising from other alongside vessels, equipment, floating cranes or barges; loss of or damage to cargo; and pollution.

**Clause 45 – Fumigation**
Charterers' warrant that the pesticides used and fumigation procedure carried out are in accordance with latest IMO/IMDG recommendations of the safe usage of pesticides in Vessels. Fumigation to be carried out by a certified company which strictly follows the latest IMO/IMDG regulations.

**Clause 46 – Boycott**
In the event of the vessel being denied or restricted in the use of port and/or loading and/ or discharging facilities or shore labor and/or tug or pilotage assistance or any other restriction, detention or any loss of time due to boycott or arrest of the vessel or due to government restriction, all caused directly by the vessel and/or by direct reason of the terms and conditions on which members of the crew are employed, the payment of hire shall cease for the time thereby lost and all direct related extra expenses incurred due to above are to be for Owners' account and may be deducted from hire.

**Clause 47 – Hold Condition on Delivery**
Vessel's holds on arrival load port to be clean swept /washed down by fresh water and dried up so as to receive Charterers' intended cargo, free of salt, rust scale and previous cargo residues to the satisfaction of an independent surveyor. If vessel's holds fail then vessel should be placed off-hire from the time of rejection till the vessel is fully accepted and passed re-inspection and any direct related expenses /time incurred thereby to be for Owners' account unless loading operations can continue in some holds, in which case vessel to be placed off hire pro rata to the number of holds rejected.

**Clause 48 – Dunnage Removal**
The Vessel shall be delivered and redelivered free of all dunnage, lining and packing materials. During the currency of this Charter Party the Charterers shall provide dunnage, lining and packing materials as required at their expense.
The Charterers shall ensure that all dunnage used shall comply with applicable phyto-sanitary regulations.



Velian Shipbrokers s.r.l.

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27ᵗʰ MARCH 2014**
**MV TEO / NORDEN AS**

Throughout the currency of the Charter Party and at redelivery, the Charterers shall remain responsible for all costs and time, including deviation, if any, associated with the removal and disposal of dunnage, lining and packing materials in accordance with MARPOL 73/78 Annex V or any other applicable rules relating to the disposal of such materials.

### Clause 49 – In Lieu of Hold Cleaning
The vessel's cargo holds on redelivery to be about the same as on delivery to Master's satisfaction. Charterers however shall have the option of redelivering the vessel without cleaning of holds against paying the Owners a lumpsum of USD          in lieu of such cleaning excluding dunnage/debris material/bark/debris removal/disposal.

### Clause 50 – Intermediate Hold Cleaning
(a) The Charterers may request the Owners to direct the crew to sweep and/or wash and/or clean the holds between voyages and/or between cargoes against payment at the rate of USD          per hold, provided the crew is able safely to undertake such work and is allowed to do so by local regulations. In connection with any such operation the Owners shall not be responsible if the Vessel's holds are not accepted or passed. Time for cleaning shall be for the Charterers' account.
(b) All cleaning agents and additives (including chemicals and detergents) required for cleaning cargo holds shall be supplied and paid for by the Charterers. The Charterers shall provide the Owners with a dated and signed statement identifying cleaning agents and additives that, in accordance with IMO Resolution 219(63) Guidelines for the Implementation of MARPOL Annex V, are not substances harmful to the marine environment and do not contain any component known to be carcinogenic, mutagenic or reprotoxic.
(c) Throughout the currency of this Charter Party and at redelivery, the Charterers shall remain responsible for all costs and time, including deviation, if any, associated with the removal and disposal of cargo related residues and/or hold washing water and/or cleaning agents and detergents and/or waste . Removal and disposal as aforesaid shall always be in accordance with and as defined by MARPOL Annex V, or other applicable rules.

Intermediate hold cleaning: USD          per hold for clean cargoes.

### Clause 51 – NAABSA
Owners agree to allow the vessel calling at Brazil, Argentina and Upriver subject to sufficient draft and lie there at any time of tides at a good and safe berth not always afloat but safely aground at any safe berth or safe place where it is customary for vessels of similar size, construction and type to lie, if so requested by the Charterers, provided always that the Charterers have confirmed in writing that vessels using the berth or place will lie on a soft bed and can do so without suffering damage.

The Charterers shall indemnify the Owners for any loss, damage, costs, expenses or loss of time, including any underwater inspection required by class, caused as a consequence of the Vessel lying aground at the Charterers' request and accept responsibility of any direct related costs and damages incur as a result and vessel shall remain on hire for any time required for repairs.

### Clause 52 – Loading of Steel
Steel cargoes to be sufficiently dunnaged/lashed/secured and unlashed/unsecured at Charterers' expenses, risk and in their time by stevedores under supervision of the Master and up to his satisfaction.

15



*Velian Shipbrokers s.r.l.*

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

Charterers agree that the Mate's Receipts and the Bills of Lading will be properly and accurately claused by fully containing all the remarks found during the pre-shipment cargo condition survey held by Owners' P&I Club surveyor. The cost for pre-shipment cargo condition survey to be equally shared between Owners and Charterers.

**Clause 53 – Notices**
Owners are to give Charterers 5/3/2/1 days approximate notice of vessel's expected date of delivery and port.

**Clause 54 - Oil pollution**
(1)Owners warrant that throughout the currency of this charter they will obtain and keep on board a certificate of Financial Responsibility to enable the vessel to trade to the United States at all times in full compliance with U.S. Oil Pollution Act 1990.
(2) Notwithstanding anything whether printed or typed herein to the contrary,
(a) save as required for compliance with paragraph (1) hereof, owners shall not be required to establish or maintain financial security or responsibility in respect of oil or other pollution damage to enable the vessel lawfully to enter, remain in or leave any port, place, territorial or contiguous waters of any country, state or territory in performance of this charter.
(b) Charterers shall indemnify owners and hold them harmless in respect of any loss, damage, liability or expense (including but not limited to the costs of any delay incurred by the vessel as a result of any failure by the charterers promptly to give alternative voyage orders) whatsoever and howsoever arising which owners may sustain by reason of any requirement to establish or maintain financial security or responsibility in order to enter, remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof.
(c) Owners shall not be liable for any loss, damage, liability or expense whatsoever and howsoever arising which charterers and/or the holders of any bill of lading issued pursuant to this charter may sustain by reason of any requirement to establish or maintain financial security or responsibility in order to enter, remain in or leave any port, place or waters, other than to the extent provided in paragraph (1) hereof.
(3) Charterers warrant that the terms of this clause will be incorporated effectively into any bill of lading issued pursuant to this charter.

**Clause 55 – Cancelling**
Deleted.

**Clause 56 – On/Off-hire Survey**
A joint survey to be held at first loading port and last discharge port for the purpose of ascertaining the quantities of the bunkers on board. The expenses of such survey will be shared equally between Owners and Charterers

**Clause 57 – Panama/Suez Canal**
Owners warrant that the vessel is (or shall be in case of new building) fitted for the transit of the Suez and the Panama Canal in loaded and/or ballast condition and complied with all and any regulations of the relevant canal authority and shall not be subject to any conditions of transit not customarily required by the relevant canal authority whether pursuant to their regulations or otherwise.

**Clause 58 – Lien Additional**
Deleted.

16



**Velian Shipbrokers s.r.l.**

**ADDITIONAL CLAUSES TO CHARTER PARTY DATED 27th MARCH 2014**
**MV TEO / NORDEN AS**

### Clause 59 – Weather tight Hatches
The Owners warrant that throughout the currency of this Charter Party the vessel's hatch covers shall be weather tight.

### Clause 60 – Protective Clauses (See attached)
The New Jason Clause, Both to Blame Collision Clause, New Both-to-Blame Collision Clause, General Average Clause, BIMCO General Paramount Clause, US Clause Paramount, Canadian Clause Paramount, as attached are all to be incorporated to this Charter Party and in all Bill(s) of lading issued under this Charter Party.

All Bill(s) of Lading expressly to state "English Law and Arbitration in London to apply".

The USA/Canadian Clause Paramount as applicable, or the Hague Rules as enacted in countries other than the USA or Canada as applicable to be incorporated in all Bill(s) of Lading as well to this Charter Party.

### Clause 61 – BIMCO Non-Payment of Hire Clause for Time Charter Parties
(a) If the hire is not received by the Owners by midnight on the due date, the Owners may immediately following such non-payment suspend the performance of any or all of their obligations under this Charter Party (and, if they so suspend, inform the Charterers accordingly) until such time as the payment due is received by the Owners.
Throughout any period of suspended performance under this Clause, the Vessel is to be and shall remain on hire. The Owners' right to suspend performance under this Clause shall be without prejudice to any other rights they may have under this Charter Party.
(b) The Owners shall notify the Charterers in writing within 24 running hours that the payment is overdue and must be received within 3 days from the time hire was due. If the payment is not received by the Owners within the number of running hours stated, the Owners may by giving written notice within 12 running hours withdraw the Vessel. The right to withdraw the Vessel shall not be dependent upon the Owners first exercising the right to suspend performance of their obligations under this Charter Party pursuant to sub-clause (a). Further, such right of withdrawal shall be without prejudice to any other rights that the Owners may have under this Charter Party.
(c) The Charterers shall indemnify the Owners in respect of any liabilities incurred by the Owners under the Bill of Lading or any other contract of carriage as a consequence of the Owners' suspension of and/or withdrawal from any or all of their obligations under this Charter party.
(d) If, notwithstanding anything to the contrary in this Clause, the Owners choose not to exercise any of the rights afforded to them by this Clause in respect of any particular late payment of hire or a series of late payments of hire, this shall not be construed as a waiver of their right either to suspend performance under sub-clause (a) or to withdraw the Vessel under sub-clause (b) in respect of any subsequent late payment under this Charter Party.

### Clause 62 – Crane drivers - Grab Operation
In any case Charterers to employ qualified shore cranemen to operate cranes/grabs.
Any damage and/ or mishandling to vessel's cranes to be entirely Charterers' responsibility and shall not constitute any off-hire to the vessel.

### Clause 63 – BIMCO Stevedore Damage Clause
a) The Charterers shall be responsible for damage (fair wear and tear excepted) to any part of the Vessel caused by Stevedores. The Charterers shall be liable for all costs for repairing such damage and for any time lost.

17