UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                       :
                                                             :
                                                             :
DAEBO INTERNATIONAL SHIPPING                                 :
CO., LTD.                                                    :     Chapter 15
                                                             :     Case No. 15-10616 (MEW)
                                                             :
       Debtor in a Foreign Proceeding                        :
-------------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY VACATUR ORDER PENDING APPEAL

SPV 1 LLC ("**SPV**") respectfully submits the following memorandum of law in support of its motion to stay the Court's opinion and order dated December 15, 2015, granting the motion of Daebo International Shipping Co., Ltd. (the "**Foreign Debtor**"), to vacate the maritime attachments ("**Attachment**") in respect of the M/V DAEBO TRADER in Louisiana [D.E.s 75 & 76] ("**Vacatur Order**") pending SPV's appeal of the Vacatur Order.

## PRELIMINARY STATEMENT

1.      SPV seeks to stay this Court's Vacatur order because without a stay, its appeal rights will be vitiated before the appeal is even filed.  SPV's jurisdiction over non-debtor Shinhan Capital Co. ("**Shinhan**") in the United States District Court for the Eastern District of Louisiana ("**Louisiana Court**") is *quasi in rem* – predicated on the existence of Shinhan's property in that district.  Thus, even if the Vacatur Order is reversed on appeal but a stay in respect of that order is not entered, SPV's ability to prosecute its claims against Shinhan will be compromised because by that time SPV's action against Shinhan before the Louisiana Court will be dismissed as directed in the Court's Vacatur Order and the bond posted by Shinhan will be released.  This circumstance

will render SPV's appeal, as the Supreme Court has noted, "an empty rite." ." *See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 689 (1950).

2. Rule 8005 of the Federal Rules of Bankruptcy Procedure governs the procedure for seeking a stay, and while that rule does not expressly set forth the standard a court should utilize in determining whether a stay should issue, the Second Circuit has held that the same well-established factors applicable to applications for stays during the appeal of district court rulings should be used. *See, e.g., In re Adelphia Communications Corp.,* 361 B.R. 337, 347 (citing cases).

3. Those factors are (i) whether the movant will suffer irreparable injury absent a say, (ii) whether a party will suffer substantial injury if a stay is issued, (iii) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (iv) the public interests that may be affected. *Id.* Each of these factors weighs in favor of granting the requested stay here.

4. As noted above, the harm to SPV if the stay is not granted is substantial. By contrast, the harm to Daebo if the stay is granted, as it has neither posted the collateral for the bond and does not pay any bond premiums, appears to be nonexistent. As the Second Circuit has noted, where the appellant faces much graver injury if a stay is denied compared to the injury facing appellee if stay is granted, even where there is less than a likelihood of success, the Court may grant a stay pending appeal. *See Mohammed v. Reno,* 309 F.3d 95, 102 (2d Cir. 2002)

5. Concerning the likelihood of success on appeal, as this Court is aware, SPV contends that it maintains a secured veil-piercing and fraudulent transfer claim against non-debtor Shinhan - a constitutionally protected property interest.

6. In the Vacatur Order, this Court found that the veil-piercing and fraudulent transfer claims are "mislabelings of [the] lease recharacterization claims and would interfere with the

2

#38229760_v1

Custodian's exclusive rights to challenge the recharacterization of the lease." In conjunction with this holding, the Court cited precedent regarding fraudulent transfer and piercing of the corporate veil, and found that the requisite criteria were not met.

7.      Of course, SPV believes that neither the veil-piercing claim or the fraudulent transfer claim are mislabeled, but rather independently arise from similar facts that give rise to the recharacterization claim, and will succeed on the merits. SPV also respectfully submits that the Louisiana Court expressly upheld SPV's veil piercing and fraudulent transfer claims - specifically in contrast to the initial, also upheld but abandoned recharacterization claim -- after a request for briefing concerning the nature of the veil-piercing and fraudulent transfer claims maintained against Shinhan.

8.      These points have of course been briefed and argued at length, which argument are summarized below.

9.      With the utmost deference, SPV also submits that that this Court ruled on the <u>merits</u> of the fraudulent transfer and veil piercing claim, and that neither Article I of the United States Constitution nor Chapter 15 authorizes a bankruptcy court to dismiss a claim by a non-debtor against a non-debtor, filed in an Article III maritime court (and not as an adversary proceeding) on the merits. Rather, the inquiry is and must solely be whether a given claim or attachment is stayed (or exclusive) under applicable bankruptcy law (in this case, Korean insolvency law)[1]. Of course,

---

[1] SPV takes this opportunity to note, in response to a recent letter to this Court, that its position regarding the Korean stay has always been consistent. D.E. # 74. At the evidentiary hearing in this matter, this Court asked a very specific question as to whether the Korean stay applied extraterritorially by its own terms. The answer, as further supported to this Court via expert declaration, was "no." The Korean stay does not apply extra-territorially, but rather had to be granted comity by a foreign court such as this. Neither SPV nor the Rule B claimants ever suggested that this Court should not grant comity to the Korean stay as a general proposition or with respect to specific relief requested, subject to 11 U.S.C. § 1522. That is of course why the Daebo property was released and the recharacterization claim dismissed. The supplemental Korean Law declaration was simply intended to provide an accurate response to the Court's question.

3

#38229760_v1

if a claim is stayed or exclusive a bankruptcy court may order it dismissed, but not on the ground that the claim is unmeritorious.

10. Accordingly, the determination as to whether SPV has set forth maritime veil piercing and fraudulent transfer claims against Shinhan on the merits is exclusively within the jurisdiction of the Louisiana Court.

11. Of course, if the Louisiana Court ultimately determines that the veil piercing and fraudulent transfer claims do not have merit, or ultimately agrees with this Court that they are mislabeled, that is a perfectly fair result. But SPV submits that it is entitled to litigate its maritime veil piercing and fraudulent transfer claims against Shinhan in an Article III Admiralty Court where Shinhan's property was attached pursuant to Rule B upon probable cause and upheld on the same basis.

12. Of course, SPV hopes that this result will occur after all appeals and holdings in this matter, and respectfully asks this Court to stay its decision such that this appeal is not an "empty rite."

## ARGUMENT

13. As noted, courts consider four factors when determining whether to grant a stay pending appeal: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer injury if a stay is issued, (3) whether the movant has demonstrated a 'substantial possibility, although less than a likelihood of success on appeal' and (4) the public interest that may be affected." These factors are treated "somewhat like a sliding scale" and the necessary level or degree will vary according to the court's assessment of the other stay factors. *Thapa v. Gonzales,* 460 F.3d 323, 334 (2d Cir. 2006).

#38229760_v1

### A. SPV Will Suffer Irreparable Injury Absent A Stay

14. Turning to the first factor, irreparable injury, Courts have long noted that in the context of a maritime attachment: "[a]ppellate review of the order dissolving the attachment at a later date would be an <u>empty rite</u> after the vessel had been released and the restoration of the attachment only theoretically possible." *Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A.,* 339 U.S. 684, 689 (1950) (emphasis supplied). This rationale is particularly relevant when the Court's jurisdiction is founded solely on a *quasi in rem* basis and when, as here, United States maritime law provides the <u>sole</u> basis for substantive relief. Simply, stated, if the action is dismissed and the bond is vacated, even if the appeal is granted SPV will not be able to pursue its action and it does not have another forum to bring its claims against Shinhan.

15. For these reasons, as Judge Gardephe noted in *Scanscot Shipping Servs. (Deutschland) GmbH v. Metales Tracomex Ltda.,* No. 08 Civ. 7505 (PGG) (S.D.N.Y. Dec. 23, 2009), "[t]he Second Circuit has repeatedly granted stays in this context, and has overruled district courts in the process."

16. In addition to *Scanscot*, the following cases are amongst the numerous, largely unpublished, decisions granting stays of orders vacating maritime attachments in this Circuit alone: *Blue Whale v. Grand China Shipping Dev. Co. Ltd.*, No. 13-cv-192 (2d Cir. Jan. 31, 2013) (attached hereto as Exhibit A); *Sinoying Logistics Pte. Ltd. v. Yi Da Xin Trading Corp.*, No. 09-5368-cv (2d Cir. Apr. 14, 2010) (attached hereto as Exhibit B); *Allied Maritime, Inc. v. Descatrade SA,* No. 09-5329-cv (2d Cir. Apr. 14, 2010) (attached hereto as Exhibit C); *Centauri Shipping Ltd. v. Western Bulk Carriers KS,* No. 07-4193-cv (2d Cir. Jan. 30, 2008) (attached hereto as Exhibit D); *Eitzen Bulk A/S v. Capex Indus. A/S,* No. 09-1987-cv (2d Cir. June 9, 2009) (attached hereto as Exhibit E); *The Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte. Ltd.*, No. 08-3477-cv (2d

5

Cir. Oct. 15, 2008) (attached hereto as Exhibit F); *Scanscot Shipping Servs. (Deutschland) GmbH v. Metales Tracomex Ltda.,* No. 08 Civ. 7505 (PGG) (S.D.N.Y. Dec. 23, 2009) (attached hereto as Exhibit G).

***B. The Foreign Representative will not Suffer Substantial Injury if a Stay is Granted Pending Appeal***

17.   SPV is not aware of any injury to Daebo that will result if a stay is granted pending SPV's appeal.  Daebo's property is not being held in connection with the bond.  Rather, it is property of Shinhan that is being held as security in New Orleans.  So too, if SPV is unsuccessful in this appeal, any collateral underlying the bond will be returned to Shinhan, not Daebo.  Shinhan posted this bond with full knowledge that appeal is a right in United States litigation.  *See, e.g.,* Order Granting Provisional Relief and Approving Agreement with Certain Creditors, D.E. 38 ("If the Vacatur Request is granted, <u>then subject to the Rule B Plaintiffs' right of appeal</u>: (i) the Rule B attachments shall fail against the Bond…") (emphasis supplied).

18.   SPV is not trying to get a "leg up" on other creditors and its rights are not protected in the Daebo bankruptcy action.  The recovery to Daebo's creditors, including SPV, is in no way related to whether Shinhan is separately liable to SPV.  If Shinhan is liable to SPV, then the Daebo estate is in not diminished.  The reverse is also true, if SPV's claim against Shinhan is dismissed, the Daebo estate is in not increased.

19.   As submitted at this hearing on this matter, SPV is not trying to get around the Korean stay.  There has never been any question that Daebo's property cannot be attached and the recharacterization claim is stayed under Korean. Rather SPV believes that (i) it maintains claims against Shinhan (veil piercing and fraudulent transfer), and (ii) these particular counts were upheld by the Louisiana Court over challenge, and (iii) these counts are simply not covered by the stay.

6

Therefore, SPV therefore has every right and a duty to pursue <u>those</u> counts against Shinhan because the Korean stay does not encapsulate these claims.

*C. SPV Has a Substantial Possibility of Success on the Merits*

20.     This Court has substantial familiarity with this matter and SPV will not burden the Court once again with a full restatement of its positions in this case. In the context of the "possibility of success on the merits" analysis, SPV submits that Judge Sofaer's comments in the case of *Hayes v. City University of New York,* 503 F. Supp. 946, 963 (S.D.N.Y. 1980) are helpful:

> How is the trial judge to assess the possibility that he has erred? Although a judge who has not finally ruled might be capable of conceding that his tentative conclusion is questionable, a judge who has reached a final conclusion will inevitably lose some of the capacity for detachment that he might normally possess. To counteract this tendency, the judge should turn to external, preferably objective indicia of the accuracy of his judgment.

21.     It is clear this Court believes that SPV's veil-piercing and fraudulent transfer claims are "mislabeled" recharacterization claims.

22.     SPV's position, of course, as it has been since the outset of this case, is that the same set of facts in this case give rise to (at least) three independent and separate causes of action. The first is obviously the (stayed) recharacterization claim, but the second and third are veil-piercing and fraudulent transfer claims against Shinhan. While the latter two may be more difficult claims to prove, they are good faith claims that exist independently from the recharacterization claims and they can and should be litigated.

23.     Moreover, it is respectfully submitted that - at least based on the standard of probable cause -- the Louisiana Court agrees with SPV's position.

24.     Substantially after this Chapter 15 action was commenced, and after SPV had initially presented its veil piercing and fraudulent transfer counts to both courts, on April 8, 2015 the Louisiana Court issued an order expressly requesting additional briefing on the nature and

7

#38229760_v1

merits of the veil piercing cause of action. After both SPV (and the other Rule B Plaintiffs) as well as Shinhan submitted their briefs on the issue, the Louisiana Court found that a veil piercing claim had been stated, and that there was probable cause for the same.

25. While SPV certainly understands this Court's conclusion that the Louisiana Court "relied on" SPV's allegations that the TRADER lease was really a secured financing and should be considered Daebo's property, SPV respectfully submits that the Louisiana Court clearly recognized the distinct (and non-recharacterization) nature of the veil piercing and fraudulent allegations, which understanding gave rise to both the supplemental briefing order and second order denying Shinhan's motion to vacate and that the same constitutes *res judicata*.

26. In addition to the Louisiana Court's decision, in supplemental briefing to this Court, SPV submitted numerous cases demonstrating that (i) such veil piercing claims shift liability to a third party, (ii) the long history of maritime creditors pursuing veil piercing actions in the wake of foreign insolvencies, and (iii) the equitable, dual track (fraud and domination) maritime veil piercing analysis whereby, at least for attachment purposes, liability transferring veil piercing and joint venture claims have been upheld against third parties (including lessor banks) under facts less egregious than those in this case. In this regard, SPV respectfully incorporates its supplemental points and authorities [D.E. 71] as well as its opposition brief [D.E. 61] by reference.

27. In sum, as to the whether SPV maintains a maritime veil piercing claim against Shinhan, SPV submits that there is a sufficient likelihood of success on appeal, particularly when considering the relative balance of equities, to warrant the issuance of the requested stay.

28. Turning next to the Court's ruling regarding fraudulent transfer (on the merits), it found that pursuant to the Second Circuit's *Atlanta Shipping v. Chemical Bank,* 818 F.2d 240, 248

8

(2d Cir. 1987) that absent property of a primary obligor being present to support *quasi in rem* jurisdiction, a maritime action against an alleged fraudulent transfer action cannot be brought.

29.     As discussed in its opposition brief, *Atlanta Shipping,* stands for the proposition in the post-judgment context that when no maritime jurisdiction was initially invoked in respect of a claim (which is not the case here), it may not be invoked later, post-judgment, in the context of a subsequent alter ego or fraudulent transfer claim.

30.     In this regard, two points ought to be made.  First, there was Daebo property (ranging from spare parts to materials) aboard the Trader at the time of the attachment. That attachment was simply released and the Daebo-portion of the litigation Daebo stayed as result of Daebo's insolvency and this Chapter 15 proceeding.  Hence the properly commenced maritime case requirement is met here.

31.     Second, and most importantly, *Atlanta* only applies (at best) in the post-judgment context, and its application in the pre-judgment maritime attachment context (Rule B) is highly dubious.  There are dozens of cases where only the property of an alleged alter ego or fraudulent transferee is attached.  Just recently, the Fourth Circuit Court of Appeals upheld the judgment (predicated initially on a Rule B attachment) of defendant-fraudulent transferee Freight Bulk, where only the fraudulent transferee's vessel (and no property of the primary obligor Industrial Carriers) was attached. *Flame S.A. v. Freight Bulk Pte Ltd.,* 807 F.3d 572 (4th Cir. 2015).  Another example, of this (in the alter-ego context) is the Second Circuit's decision in *Blue Whale,* where only the alleged alter-ego's property was attached.[2]

---

[2] *See also See, e.g., in re Holborn Oil Trading Ltd. v. Interpol Bermuda Ltd.,* 774 F. Supp. 840 (S.D.N.Y. 1991); *Kommanditselskab Supertrans v. O.C.C. Shipping Inc.,* 79 B.R. 535, 539 (S.D.N.Y. 1987); *Ermis Management Co. Ltd. v. United California Discount Corp.,* 07-cv-01021 (D.N.V. August 3, 2009) (post-award alter ego admiralty jurisdiction upheld over challenge); *Fertilizantes Fosfatados Mexcanos S.A. v. Chen,* 1992 WL 204394 (S.D.N.Y. 1992), all of which do not comport with the application of *Atlanta Trading* to this case.

9

#38229760_v1

32. In connection with the Courts' rulings on both the veil-piercing and fraudulent transfer claims, this Court found that the actions against Shinhan would "interfere" with the exclusive rights of the custodian to bring the TRADER into the estate for the benefit of all of Daebo's creditors.

33. SPV is currently investigating the status of the Daebo recharacterization and plan confirmation effort (and whether the same has in fact been accomplished, which would moot the issue). More importantly however, Shinhan being liable as a fraudulent transferee or alter ego is simply not mutually exclusive with a Korean recharacterization action. One does not preclude and has nothing to do with the other.

34. Shinhan's prospective liability in New Orleans was and is predicated on Shinhan's property in the District of Louisiana, which was seized to create *quasi in rem* jurisdiction in respect of an (otherwise) *in personam* claim against Shinhan (it was not an *in rem* seizure nor are the claims *in rem*).

35. Moreover, as the Foreign Representative testified at trial, it is expected that there would be virtually no equity in the Daebo Trader beyond Shinhan's (allegedly) secured interest anyway. Hence, whether the Vessel is recharacterized or not is irrelevant.

36. Next, there is no indication of *how* the actions against Shinhan would interfere with a proposed recharacterization action (beyond Shinhan's voting for a plan that cannot be controlled in any event) or what the consequences of the same might be – particularly how such damage compares in relation to the total loss of SPV's secured claim against Shinhan, which must be considered under 11 U.S.C. 1522. While the Foreign Representative pointed to Shinhan's plan confirmation vote during the evidentiary hearing, no significant creditor could ever be pursued if plan confirmation approval was a lynchpin to the interference analysis.

37.     The Vacatur Order notes that SPV may participate in the Korean bankruptcy and therefore is protected, but SPV's point is that it is entitled to recover from Shinhan, which is <u>not</u> within the Korean bankruptcy.  Indeed, assuming that there is a veil-piercing claim, Shinhan could both have its property characterized and be liable to creditors.

38.     Finally, it is humbly and respectfully submitted that by ruling on the merits, the Vacatur Order exceeded the scope of this Court's authority under Chapter 15 and Article I of the United States Constitution.

39.     A necessary component of this Court's finding that the veil piercing and fraudulent transfer were "mislabeled" is that these claims were unmeritorious and simply do not satisfy the applicable legal standards.  *See* Vacatur Order (at p 14-15, 16-18) (citing and analyzing fraudulent transfer and veil piercing precedent).

40.     To be clear, SPV is not arguing that this Court is without authority to vacate attachments of a foreign debtor's property or stay and dismiss lawsuits or causes of action that are exclusive to a foreign debtor.  That was the purpose of the vacatur motion before this Court and the parties' agreement.  But that is wholly different that deciding the merits of an ongoing, pre-Chapter 15 litigation in Louisiana federal court by a non-debtor against a non-debtor arising under federal maritime common-law.

41.     It is respectfully submitted that no provision of Chapter 15 authorizes a bankruptcy court to make merits findings on underlying maritime (or even non-maritime) claims as in the Vacatur Order – particularly if the relevant District Court has made a finding to the contrary.

42.     Here the Vacatur Order did not rule that a veil-piercing claim is exclusive to the foreign debtor applicable Korean law and therefore must be stayed, or that the TRADER could not be attached because Daebo leased it, it ruled that <u>no veil piercing claim exists</u>.  *See Stern v.*

11

#38229760_v1

*Marshall,* 131 S.Ct. 2594 (2011) (state law); *see also, e.g., In re Marciano* 708 F.3d 1123 (9th Cir. 2013) (joining majority of courts in holding that, in the context of a bonafide dispute analysis, inquiry into underlying merits of a judgment impermissibly turns bankruptcy courts into appellate odds makers and leads to inconsistent judgments); *In re Riffe Petroleum*, 601 F.2d at 1390 (in the context of seizure non-debtor's that "impacted" debtor, holding that "Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate").  These cases involve domestic bankruptcies but in the even more limited, ancillary capacity of Chapter 15 proceedings, the argument is actually heightened.

43.    If this Court is correct in its conclusion that SPV's veil piercing and fraudulent transfer claims are mislabeled and unmeritorious, then both Daebo and Shinhan will have every opportunity to make these arguments in front of the Louisiana Court and, as necessary, the Fifth Circuit Court of Appeals.  That is where the merits of the veil piercing and fraudulent transfer claims must be decided.

### D. Granting a Stay Serves the Public Interest

44.    Chapter 15 is designed to strike a balance between the interests of creditors and the interests of foreign debtors.  *See* 11 U.S.C. 1522.  This balance is even more important when the rights of claimants against non-debtors are at stake.

45.    In this case, it is respectfully submitted that this appeal will serve an important public purpose.  It will assist in resolving the long-running tension between admiralty law and bankruptcy law as a general matter and examine the decades-long practice of veil-piercing attachments in the wake of foreign and domestic bankruptcies.  More specifically, due to the "unique corporate arrangements that exist in the maritime industry," federal maritime law has adopted "unique rules" governing corporate liability.  This is true in all maritime cases and applies

12

#38229760_v1

even to non-maritime actors that are parties in maritime cases, "irrespective of whether corporate entities expected, *ex ante,* that their corporate relationship would be scrutinized in a maritime action." *In re M/V RICKMERS GENOA Litigation*, 643 F. Supp. 2d 553, 557 (S.D.N.Y. 2009) (multiple citations omitted); *see also Navalmar (U.K. Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.,* 485 F.Supp. 2d 399, 404 (S.D.N.Y. 2007) *Aurora Maritime Co. v. Abdullah Mohamed Fahem & Co.,* 85 F.3d 44 (2d Cir. 1996)) (noting special equitable need to permit piercing the corporate veil in a "world of shifting assets, numerous thinly capitalized subsidiaries, flags of convenience and flows of currencies").

46. Absent a stay, these important issues will not be addressed in an appellate setting because SPV's appeal will be an "empty rite."

## CONCLUSION

47. SPV deserves a meaningful appeal, and for the foregoing reasons, the requested stay pending appeal should be granted.

Dated: January 6, 2015

        **HOLLAND & KNIGHT LLP**
        */s/ Warren E. Gluck*
        Warren E. Gluck
        31 West 52nd Street
        New York, NY 10019
        Tel: (212) 513-3200
        Fax: (212) 385-9010
        warren.gluck@hklaw.com
        *Attorneys for SPV 1, LLC*