**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 15** |
| | : | |
| **DAEBO INTERNATIONAL SHIPPING CO., LTD.,** | : | **Case No. 15-10616 (MEW)** |
| | : | |
| **Debtor in a Foreign Proceeding** | : | |
| | : | |

## DECISION GRANTING MOTION FOR STAY PENDING APPEAL

On December 15, 2015, this Court issued a Memorandum Decision and a separate Order

granting the motion of the foreign representative of Daebo International Shipping Co., Ltd to

vacate maritime attachments made against the M/V DAEBO TRADER in Louisiana by SPV1,

LLC and by other parties that collectively were referred to as the "Rule B Plaintiffs."  SPV filed

an appeal on January 6, 2016 and also filed a motion for a stay pending appeal, which the foreign

representative opposes.  Another Rule B Plaintiff also filed a motion for a stay pending appeal

[ECF No. 86], but that party has not filed an appeal and its motion is moot.

### Standard for Stay Pending Appeal

Bankruptcy Rule 8007 provides that a party seeking a stay pending appeal" must apply in

the first instance to the bankruptcy court.  FED. R. BANKR. P. 8007(a)(1)(A).  The decision to

grant or deny a stay is within the discretion of the bankruptcy court.  *In re Overmyer*, 53 B.R.

952, 955 (Bankr. S.D.N.Y. 1985).  In ruling on such a motion the court must consider: (1)

whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer

substantial injury if a stay is issued, (3) whether the movant has shown "a substantial possibility,

although less than a likelihood, of success" on appeal, and (4) how public interests may be

affected.  *Hirschfeld v. Board of Elections*, 984 F.2d 35, 39 (2d Cir. 1992).

With respect to the probability of success on appeal, the Court of Appeals for the Second

Circuit has found "considerable merit in the approach expressed by the District of Columbia

Circuit [to the effect that] [t]he necessary level or degree of possibility of success will vary

according to the court's assessment of the other stay factors." *Mohammed v. Reno*, 309 F.3d 95,

101 (2d Cir.2002), *citing Washington Metropolitan Area Transit Commission v. Holiday Tours,*

*Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977) (internal quotations omitted).  Thus, the extent of the

probability of success that must be shown is "inversely proportional" to the injury the appellant

may suffer in the absence of a stay.  *Id*.

## Discussion

The Court finds that SPV has not shown a reasonable prospect of success on appeal.  It is

undisputed that the Rule B attachments were issued after the commencement of a rehabilitation

proceeding in Korea with respect to Daebo, and after the effectiveness of a stay order issued by

the Korean court.  The Rule B Plaintiffs admitted at trial that the Korean court's order barred

them from proceeding against Daebo's property, and that as a result they were also barred from

pursuing claims that a 2007 sale/leaseback transaction between Daebo and Shinhan Capital Co.

with respect to the TRADER was a "sham," or that the transaction was really a disguised secured

loan, or that for any other reason the TRADER is really Daebo's property.  Moreover, the Rule B

Plaintiffs agreed that this Court has the power, under chapter 15 and the relevant Korean law, to

prevent the Rule B Plaintiffs from pursuing such claims in Louisiana.

The Rule B Plaintiffs nevertheless argued at trial that they were entitled to pursue

separate "alter ego" and "fraudulent transfer" claims against Shinhan in Louisiana.  The Court

rejected these arguments for two reasons.  First, the Court held that the purportedly separate

fraudulent transfer and alter ego claims were not separate claims at all, but were just efforts to

2

apply different labels to the contention that the sale/leaseback transaction between Daebo and

Shinhan was really a secured financing and that the TRADER really is Daebo's property.

Second, the Court held that even if the Rule B Plaintiffs were right in characterizing their claims,

the pursuit of the claims in Louisiana nevertheless would interfere with the exclusive right of the

custodian in the Korean rehabilitation proceedings to seek to recharacterize the lease with

Shinhan and to treat the TRADER as property of Daebo in the Korean rehabilitation

proceedings, and with the exclusive power of the Korean court to determine the nature and the

priority of the claims that Daebo's creditors may make against the TRADER.

As to the first ruling: The Court gave the Rule B Plaintiffs every opportunity at trial to

explain how their "alter ego" and "fraudulent transfer" claims were somehow different from their

contentions that the lease was a sham or that it was really a secured loan, and they failed to do so.

Instead, the Rule B Plaintiffs acknowledged at trial that the sole basis for the claims they wished

to pursue in Louisiana was their contention that the sale/leaseback transaction should be

disregarded and should not be allowed to put the TRADER out of reach of Daebo's creditors.

The Rule B Plaintiffs did not even purport to allege the elements of fraudulent transfer and alter

ego claims, and in the case of the alter ego claims they acknowledged that they could not satisfy

the basic elements of such a claim.  Nor did the Rule B Plaintiffs identify any other facts that

might support a finding that Shinhan had incurred some direct liability to the Rule B Plaintiffs.

In short, the "alter ego" and "fraudulent transfer" claims were just efforts to apply different

names to the "sham lease" claims that the Rule B Plaintiffs admitted they could not pursue

directly.  The protections afforded by chapter 15, and the Court's ability to prevent the Rule B

Plaintiffs from pursuing claims that the TRADER is really Daebo's property, would be hollow if

the Rule B Plaintiffs could evade the problem just by applying different labels to their claims.

As to the second ruling: the Court held that even if the Rule B Plaintiffs were correct as to the labeling of the claims that they wished to assert, and even if those claims were somehow different from the lease characterization claims, the Rule B attachments still would interfere with the exclusive powers of the custodian and the Korean court in the Korean rehabilitation proceeding.  SPV has offered no reason to question this part of the Court's ruling.

The custodian in the Korean rehabilitation proceedings has the exclusive right to contend that the lease with Shinhan was really a secured financing, and that the TRADER should be treated as an asset of DAEBO and made available to the satisfaction of creditor claims in the Korean rehabilitation case.  The papers filed in the Korean case, and the testimony at trial, were to the effect that the transaction between Shinhan and Daebo is being treated as a secured loan in the Korean rehabilitation proceedings, and that if there are any proceeds from disposition of the TRADER (after paying allowed secured claims) they will be made available to the payment of unsecured creditors generally.  The Rule B attachment, and the Rule B proceedings, would interfere with these aspects of the Korean rehabilitation proceedings.  SPV is a creditor of Daebo, and it has filed a claim in the Korean proceedings.  The claim that SPV wishes to pursue in Louisiana arises entirely out of transactions between SPV and Daebo that did not involve the TRADER or Shinhan.  The Rule B attachment, if it were not vacated, would allow one unsecured creditor of Daebo (SPV) to assert claims directly against the TRADER[1] in Louisiana in an effort to divert some of the value of the TRADER to the full payment of SPV's own claim in the United States, rather than having the full value of the TRADER made available for administration in Korea for the benefit of creditors generally.

---

[1]    Technically a bond was substituted for the TRADER, but with the agreement of the parties that for all purposes the continued validity of the attachment would be considered as though it were an attachment of the TRADER itself.  [ECF No. 38 at ¶¶ 4-6.]

In addition, the Rule B proceedings (if allowed to continue) would allow SPV to seek a ruling from the Louisiana district court, not the Korean court, as to whether SPV's unsecured claim should be allowed and whether that claim should be given priority over Shinhan's rights against the TRADER.  It is the Korean court that has the exclusive right to decide, under Korean law, the nature and priority of any claims that Shinhan and other Daebo creditors may assert with respect to the TRADER or with respect to any other asset that is subject to the Korean rehabilitation proceeding.  Under Chapter 15 it is proper as a matter of comity to enforce the custodian's rights, and the Korean court's exclusive jurisdiction, by vacating the attachments and directing that the Rule B proceedings be dismissed.

The Court therefore finds that SPV has not shown reasonable prospects of success on appeal.  However, Daebo has not alleged that either it or Shinhan will be prejudiced by continuing a stay pending the appeal.  SPV has alleged that the appeal could be rendered moot in the absence of a stay; courts have reached different conclusions as to whether such a risk amounts to irreparable injury, but this Court agrees that the "loss of appellate rights is a 'quintessential form of prejudice' warranting a finding of irreparable harm."  *See ACC Bondholder Group v. Adelphia Commc'n Corp. (In re Adelphia Commc'n Corp.)*, 361 B.R. 337, 347-8 (S.D.N.Y. 2007) (citing cases on both sides).  Therefore, in balancing the equitable considerations, the Court has determined that, to avoid the risk that SPV's appeal would become moot, and notwithstanding the lack of merit to the Rule B Plaintiffs' arguments, it will grant the motion for a stay, as to SPV, during the pendency of its appeal.  A separate Order will be issued.

Dated:  New York, New York
        February 4, 2016


                                        **s/Michael E. Wiles**
                                        UNITED STATES BANKRUPTCY COURT